STATE OF NORTH CAROLINA v. MARK EDWARD THOMPSON

No. 217A90

(Filed 3 April 1991)

1. **Criminal Law § 17 (NCI4th)— insanity—presumption of sanity—burden of proof not shifted**

The trial court did not err in a prosecution for burglary, armed robbery, and murder by instructing the jury that everyone is presumed sane and that soundness of mind is the natural and normal condition of people. The cases relied upon by defendant, *Francis v. Franklin*, 471 U.S. 307, and *Sandstrom v. Montana*, 442 U.S. 510, prohibit the use of presumptions which would shift the burden of proof of any

essential element of the offense. The presumption of sanity does not relieve the State of its burden of proof of any essential element of the crimes committed in this case.

**Am Jur 2d, Criminal Law § 111; Trial § 742.**

2. **Criminal Law § 767 (NCI4th) — insanity — instruction — burden of proof not shifted**

The trial court's instruction on insanity in a prosecution for burglary, armed robbery, and murder did not violate due process by shifting the burden of proof on the *mens rea* element of first degree murder or the scienter elements of burglary and armed robbery.

**Am Jur 2d, Criminal Law § 111; Trial § 742.**

3. **Criminal Law § 771 (NCI4th) — insanity — requested instruction refused — no error**

The trial court in a prosecution for murder, burglary, and armed robbery did not err by refusing to give defendant's instruction on "knowing the nature and quality of the act" where defendant's requested instruction, in light of the expert testimony in this case, would have tended to confuse rather than enlighten the jury.

**Am Jur 2d, Trial §§ 738, 739.**

4. **Criminal Law § 413 (NCI4th) — right to open and close arguments — denied — insanity defense**

The trial court did not err in a prosecution for burglary, armed robbery, and murder by denying defendant the opportunity to open and close the final arguments because he bore the burden of proving his sanity. Although defendant contends that *State v. Battle*, 322 N.C. 69, can be distinguished by the prosecution's less than accurate arguments in this case, defendant did not object to the prosecutor's argument and has brought forth no assignment of error complaining of prosecutorial misconduct.

**Am Jur 2d, Trial § 213.**

5. **Criminal Law § 793 (NCI4th) — insanity — acting in concert — requested instruction given in substance**

The correct portion of defendant's requested instruction on acting in concert as it relates to insanity was given in

substance in a prosecution for burglary, armed robbery, and murder.

**Am Jur 2d, Trial §§ 738, 739.**

6. **Criminal Law § 46.1 (NCI3d)— flight—requested instruction denied—evidence not sufficient**

The trial court did not err in a prosecution for burglary, armed robbery, and murder by denying defendant's requested jury instruction on flight from the scene. Mere evidence that defendant left the scene of the crime is not enough to support an instruction on flight; there must also be some evidence that defendant took steps to avoid apprehension. Although defendant contended here that the prosecution's argument was the equivalent of an argument that defendant was taking steps to avoid apprehension, nowhere in the prosecutor's argument was there any contention that there was flight by defendant.

**Am Jur 2d, Trial §§ 788, 789.**

7. **Homicide § 24.1 (NCI3d)— murder—use of deadly weapon— requested instruction given in substance**

The trial court did not err in a murder prosecution by refusing defendant's requested jury instruction on the use of a deadly weapon, malice, and premeditation and deliberation where defendant's requested language was taken almost verbatim from an appellate opinion concerning legal sufficiency of the evidence to support the jury's finding of premeditation and deliberation. This statement was not intended to be a jury instruction and it is confusing and not helpful to instruct a jury in terms of what an appellate court will consider sufficient to sustain a jury finding. Moreover, the trial court gave defendant's requested instruction in substance.

**Am Jur 2d, Trial §§ 589-592.**

8. **Criminal Law § 43.4 (NCI3d)— murder—photographs of victims—admissible**

The trial court did not err in a prosecution for murder, burglary, and armed robbery by admitting photographs of the victims. Although some of the photographs were gruesome, they were relevant to illustrate the testimony of two State's witnesses and were not excessive or repetitious. Moreover,

the court gave cautionary instructions on the use of photographs for illustrative purposes.

**Am Jur 2d, Homicide §§ 417-419; Trial § 682.**

**Admissibility of photograph of corpse in prosecution for homicide or civil action for causing death. 73 ALR2d 769.**

9. **Criminal Law § 1123 (NCI4th)— burglary and robbery — sentencing — nonstatutory aggravating factor — planning**

The trial court did not err during sentencing for burglary and robbery convictions by finding as a nonstatutory aggravating factor that the burglary and robberies were planned, premeditated and deliberate. It was clear that the defendant took extraordinary steps to prepare for the commission of the crimes and it is apparent that what the sentencing judge actually found was that the extraordinary planning in this case exceeded that which is ordinarily present or inherent in the crimes of first degree burglary and armed robbery. The additional finding that the offenses were premeditated and deliberate was surplusage. N.C.G.S. §§ 15A-1340.4(a), 15A-1340.3.

**Am Jur 2d, Burglary § 73.5; Criminal Law §§ 598, 599; Robbery § 84.**

10. **Criminal Law § 1128 (NCI4th)— burglary and robbery — sentencing — aggravating factor — victims helpless and defenseless**

The trial judge did not err when sentencing defendant for burglary and robbery by considering the age of the victims, the location of their home in a rural area, and the fact that one of the victims was asleep at the time of the crimes in finding in aggravation that defendant took advantage of the victims being helpless and defenseless. The evidence supports the finding that the victims were vulnerable and helpless and that defendant took advantage of their situation. A person who is attacked while asleep is in a more vulnerable position than one who is conscious of his surroundings and *State v. Underwood*, 84 N.C. App. 408, is overruled to the extent it conflicts with this decision.

**Am Jur 2d, Burglary § 73.5; Criminal Law §§ 598, 599; Robbery § 84.**

### STATE v. THOMPSON

[328 N.C. 477 (1991)]

APPEAL by defendant pursuant to N.C.G.S. § 7A-27(a) from judgments imposing consecutive sentences. of life imprisonment entered by *Herring, J.,* on 25 September 1989, in Superior Court, NEW HANOVER County. Defendant's motion to bypass the Court of Appeals on additional judgments allowed by the Supreme Court 1 June 1990. Heard in the Supreme·Court 11 December 1990.

*Lacy H. Thornburg, Attorney General, by Ellen B. Scouten, Assistant Attorney General, for the State.*

*William O. Richardson and Richard B. Glazier for defendant-appellant.*

FRYE, Justice.

On 2 February 1987, the Cumberland County Grand Jury indicted defendant on first degree burglary, robbery with a dangerous weapon and first degree murder charges. The first count of the indictment charged defendant with breaking and entering the occupied dwelling house of Paul H. and Janie M. Kutz during the nighttime between the hours of 11:30 p.m. on 1 December 1986 and 12:30 a.m. on 2 December 1986, with the intent to commit larceny therein, in violation of N.C.G.S. § 14-51. Counts two and three of the indictment charged defendant with unlawfully, willfully and feloniously taking and carrying away, by means of an assault with a deadly weapon, and from the person and presence of Paul H. and Janie M. Kutz, specifically described personal property, whereby the lives of Paul H. and Janie M. Kutz were endangered, in violation of N.C.G.S. § 14-87. Counts four and five of the indictment charged defendant with the murder of Paul H. and Janie M. Kutz in violation of N.C.G.S. § 14-17. All of the offenses were alleged to have occurred between the dates of 1 December 1986 and 2 December 1986. On defendant's motion, Judge Giles Clark ordered a change of venue from Cumberland County to New Hanover County where the trial took place.

The State presented evidence which tended to show that defendant, Mark Edward Thompson, age seventeen, was in the army and stationed at Fort Bragg, North Carolina, when the crimes occurred. In November of 1986, defendant and Jeff Meyer (Meyer), age twenty, were playing Dungeons and Dragons, a game of adventure in a medieval setting, where several Ninja assassins go into the house of an elderly couple and assassinate them.

STATE v. THOMPSON

[328 N.C. 477 (1991)]

On 1 December 1986, dressed in their Ninja outfits, defendant and Meyer broke into the Kutz home in rural Cumberland County around 11:15 p.m. The defendant and Meyer chose the Kutz home because it had something like a moat around it, which matched particular features of the game they were playing. After breaking into the house they found Mr. Kutz, age sixty-nine, in a recliner and Mrs. Kutz, age sixty-two, asleep in the bedroom. They killed Mr. Kutz by stabbing him seventeen times. They killed Mrs. Kutz by stabbing her twenty-five times.

Defendant and Meyer stole jewelry, credit cards and a television from the Kutz home. They drove back to Fort Bragg, still dressed in their Ninja outfits, and were stopped by military police because they were in an off-limits area. The officer who stopped them saw a knife, some jewelry, and a television set inside the vehicle. Upon searching the truck, the officer found credit cards and business papers which belonged to Paul Kutz. Another military police officer found two pairs of latex gloves with blood on them in the truck. The officers then contacted the Cumberland County Sheriff's Department. Deputy Stewart was sent to the Kutz residence. Deputy Stewart went inside the Kutz home and found the dead bodies of Mr. and Mrs. Kutz.

An autopsy was performed on both victims. Laboratory experts found the following: 1) One of the Ninja shoes defendant was wearing was consistent with a footwear impression found on a seat cushion from the living room of the Kutz home; 2) The cushion was on a chair located under the front window; 3) Blood on the butterfly knife, found closest to defendant when stopped, matched the blood type of Mrs. Kutz; 4) Fibers from Mrs. Kutz's nightgown matched fibers on the knife found next to defendant; 5) Fibers from Mrs. Kutz's bed blanket and also her quilt matched those found on the same knife; 6) A fiber found on defendant's shirt matched the fibers of Mrs. Kutz's bedsheet; and 7) A carpet fiber found on defendant's pants matched the carpet in the den where Mr. Kutz's body was found.

Defendant confessed to being present at the time of the murders, stealing the property, and watching Meyer stab Mrs. Kutz. Defendant stated in his confession that Meyer broke into the house and opened the front door for defendant to enter the house. Defendant later confessed to his psychologist that he participated in the stabbing of Mrs. Kutz.

Defendant presented an insanity defense. Dr. Rollins, a forensic psychiatrist at Dorothea Dix Hospital, testified that defendant had a personality disorder and was emotionally unstable, but at the time he committed the crimes, defendant knew the nature, quality, and wrongfulness of his acts. Dr. Logan, a forensic psychiatrist at the Menniger Clinic in Topeka, Kansas, testified that defendant had an identity disorder and that he knew the nature of the crimes, but he did not realize the moral impact of what he was doing. However, Dr. Logan later testified defendant knew the killing was morally wrong, but defendant quickly retreated into a fantasy. Dr. Foster, a forensic psychologist with the Federal Bureau of Prisons in Rochester, Minnesota, testified that in his opinion defendant was not psychotic, that he knew right from wrong in a sense of cognitive knowing, but could not appreciate the quality of his act.

The jury found defendant guilty of first degree burglary, two counts of robbery with a dangerous weapon, and two counts of first degree murder. After hearing evidence in the penalty phase, the jury recommended that defendant be sentenced to life imprisonment on both counts of first degree murder. The trial judge sentenced defendant to two consecutive terms of life imprisonment for murder and an additional consecutive life term for first degree burglary plus forty years imprisonment for the combined counts of robbery with a dangerous weapon. Defendant appealed.

[1] The first question we address is whether the trial court committed reversible error in instructing the jury that everyone is presumed sane and that soundness of mind is the natural and normal condition of people. We conclude that the trial court did not err.

Defendant contends that the part of the North Carolina Pattern Jury Instructions which states that "everyone is presumed sane" and that "soundness of mind is the natural and normal condition of people" is an unconstitutional burden shifting jury charge and blatantly at odds with *Francis v. Franklin*, 471 U.S. 307, 85 L. Ed. 2d 344 (1985), and *Sandstrom v. Montana*, 442 U.S. 510, 61 L. Ed. 2d 39 (1979). Defendant contends that *Franklin* and *Sandstrom* prohibit the use of conclusive or even rebuttable presumptions against the defendant in any criminal case.

In *Franklin*, the trial court instructed the jury that "the acts of a person of sound mind and discretion are presumed the product

of a person's will, but the presumption may be rebutted and a person of sound mind and discretion is presumed to intend the natural and probable consequences of his acts, but the presumption may be rebutted." 471 U.S. at 316, 85 L. Ed. 2d at 354. The Supreme Court held in *Franklin,* that the instruction at issue "undeniably created an unconstitutional burden-shifting presumption with respect to the element of intent." 471 U.S. at 318, 85 L. Ed. 2d at 356. In *Sandstrom,* the trial court instructed the jury that "the law presumes that a person intends the ordinary consequences of his voluntary acts." The Supreme Court found that the instruction violated the defendant's Fourteenth Amendment right to due process because it tended to relieve the State of the burden of proof, on the critical question of state of mind. 442 U.S. at 524, 61 L. Ed. 2d at 51.

The cases relied upon by the defendant prohibit the use of presumptions which relieve the State of the burden of proof of any essential element of the offense. The presumption of sanity does not relieve the State of its burden of proof of any essential element of the crimes committed in this case. In *State v. Marley,* 321 N.C. 415, 364 S.E.2d 133 (1988), this Court concluded that the nature of the insanity defense is a separate issue from proof of the elements of a crime. Just as in *Marley,* the trial judge in this case instructed the jury that it could not consider the issue of defendant's insanity unless it first found beyond a reasonable doubt the existence of each element of the five crimes for which the defendant had been charged. There was nothing in the trial judge's instruction, considered as a whole, which would lead the jury to understand the instructions to mean that the State was relieved of its burden to prove all of the essential elements of each of the five crimes.

If we could not presume sanity, the State would have to prove sanity in every case, and there would be no burden of proof of insanity on the defendant. This Court has reaffirmed the presumption of sanity in many cases. *See State v. Battle,* 322 N.C. 69, 366 S.E.2d 454 (1988); *State v. Heptinstall,* 309 N.C. 231, 306 S.E.2d 109 (1983); *State v. Jones,* 293 N.C. 413, 238 S.E.2d 482 (1977). The defendant in the present case has not provided an argument sufficient to cause an overturning of the well-established precedent of this Court.

[2] In defendant's second argument, defendant contends that the trial court committed reversible error in placing the burden of proof on the issue of insanity on defendant in violation of his due process right to have the prosecution prove every element of the crime beyond a reasonable doubt. Defendant contends that the instruction at issue violates due process by shifting the burden of proof on the *mens rea* element of first degree murder as well as the scienter elements of burglary and robbery with a dangerous weapon.

Defendant concedes that this Court rejected this very argument in *State v. Evangelista*, 319 N.C. 152, 353 S.E.2d 375 (1987), and *State v. Mize*, 315 N.C. 285, 337 S.E.2d 562 (1985). However, he requests that we reconsider our previous decisions on this matter. We decline to overrule these cases. *See State v. Battle*, 322 N.C. 69, 366 S.E.2d 454.

[3] In defendant's third assignment of error, he contends that the trial court committed reversible error in refusing to grant his requested jury instruction on the definition of "knowing the nature and quality of the act" as that term is used in the North Carolina Pattern Jury Instruction on insanity. It is defendant's contention that the testimony of expert witnesses concerning his mental state indicated that he could not appreciate the quality of the acts which occurred on 1 December 1986, or the fact that anyone was killed. According to defendant, a definition of the term "knowing" was required. The defendant requested the following jury instruction in connection with his insanity defense:

> The definition of "knowing" in this context encompasses more than just minimal awareness of facts or the ability to mechanically repeat what has happened. Knowledge, for purposes of this test, exists when defendant is able to evaluate his conduct in terms of its actual impact upon himself and others and when he is able to appreciate the total setting in which he is acting.

The trial court refused to give this instruction. We find no error.

North Carolina utilizes the *M'Naghten* rule, and our cases have stated the test for insanity as follows:

> [A]n accused is legally insane and exempt from criminal responsibility by reason thereof if he commits an act which would otherwise be punishable as a crime, and at the time of so

STATE v. THOMPSON

[328 N.C. 477 (1991)]

doing is laboring under such a defect of reason, from disease of the mind, as to be incapable of knowing the nature and quality of the act he is doing, or, if he does know this, incapable of distinguishing between right and wrong in relation to such act.

*State v. Johnson*, 298 N.C. 47, 65-66, 257 S.E.2d 597, 612 (1979) (quoting *State v. Swink*, 229 N.C. 123, 125, 47 S.E.2d 852, 853 (1948)). In most *M'Naghten* jurisdictions the word "know" is not defined at all, leaving the jury free to determine the meaning on the basis of the expert testimony received at trial. W. LaFave and A. Scott, *Substantive Criminal Law*, § 4.2 (1986). The failure to define "knowing" has been explained as follows:

An expansive definition of "knowing" may create two significant difficulties. First, expert psychiatric witnesses may invoke a definition of "knowing" which could confuse lay jurors unfamiliar with psychiatric terms. The jury, judge, and psychiatrist well may have different conceptions when using the word "knowing." Furthermore, cross-examination probably would exacerbate the confusion. Second, the complexity involved in defining "knowing" differently from its common usage may undermine the advantages of the *M'Naghten* insanity test, which jurors theoretically understand without difficulty.

Comment, *The Insanity Defense in North Carolina*, 14 Wake Forest L. Rev. 1157 (1978).

In the present case, there was both lay and expert testimony on the issue of insanity. The trial judge charged the jury in pertinent part as follows:

The test of insanity as a defense is whether the defendant at the time of the alleged offense was laboring under such a defect of reason from disease or deficiency of the mind as to be incapable of *knowing the nature and quality of the act*; or, if he did know this, whether he was, by reason of such defect of reason, incapable of distinguishing between right and wrong *in relation to the act committed*.

This defense consists of two things. First, the defendant must have been suffering from a disease or defect of his mind at the time of the alleged offense. Second, this disease or defect must have so impaired his mental capacity that he either did not *know the nature and quality of the act as he was*

*committing it*; or, if he did, that he did not know that this act was wrong. (Emphasis added.)

In addition the trial court gave a supplemental instruction as follows:

With respect to whether or not the defendant *knew* his act was wrong, the law does not require a defendant to *know* his act in question was both legally wrong and morally wrong. *The test does not involve the understanding of abstract wrong. What it does require is that the defendant understand the moral wrongfulness of the particular and specific act at issue.* (Emphasis added.)

We are not convinced that a further attempt to define the words "know," "knowing," or "knowledge" would be helpful to the jury in determining whether defendant had met his burden of establishing his insanity. Telling the jury, as defendant requested, that knowledge exists when one "is able to appreciate the total setting in which he is acting" would, in light of the expert testimony in this case, tend to confuse rather than assist the jury. Therefore, the trial judge did not err in refusing to give the requested instruction.

[4] In defendant's next assignment of error, he contends that the trial court erred in denying defendant the opportunity to open and close the final arguments because he bore the burden of proving his insanity. Defendant contends that since his presence at the scene of the crimes and his partial participation were uncontradicted, defendant bore the burden of proving the only salient issue to the jury, the question of his insanity. Defendant concedes that this Court previously considered this issue and ruled that, even in insanity cases, where the defendant introduces evidence, Rule 10 of the General Rules of Practice for the District and Superior Courts controls, with the State having the right to opening and closing arguments. *State v. Battle*, 322 N.C. 69, 366 S.E.2d 454. However, defendant contends that considering the prosecution's less than accurate arguments in this case, the fact that both prosecutors argued after defense counsel, and counsel's repeated requests to rebut those arguments solely limited to the issue of insanity, *Battle* is not dispositive.

As defendant concedes, this Court has considered and rejected this very argument in *Battle*. While defendant contends that the present case is different because of the prosecutor's less than ac-

curate arguments, he has brought forth no assignment of error complaining of prosecutorial misconduct, nor did he object to the prosecutor's argument; therefore, we find our decision in *Battle* dispositive. This assignment of error is without merit and rejected.

[5] Defendant next takes issue with the trial court's refusal to grant his requested jury instruction concerning limitations on the acting in concert theory as it relates to insanity and mental health defenses. The trial judge charged the jury in accordance with the Pattern Jury Instruction as follows:

> For a person to be guilty of a crime, it is not necessary that he himself do all of the acts necessary to constitute the crime. If two or more persons act together with a common purpose to commit a crime, [such as first degree burglary or armed robbery or murder], each of them is held responsible for the acts of the others done in the commission of that crime.

Defendant requested, as a supplement to the Pattern Jury Instruction, that the trial judge also give the following instruction:

> This instruction is subject to and is limited by the Court's subsequent instructions with respect to the defenses of diminished capacity and insanity. That is to say, if the jury finds the State has failed to prove beyond a reasonable doubt that defendant possessed the specific intent to kill, premeditate or deliberate or that he shared the same criminal purpose as Jeffrey Karl Meyer, then the fact that Meyer possessed these elements or acted with a specific criminal purpose may *not* be transferred to this defendant.
>
> Furthermore if the defendant proves to the jury's satisfaction that he was insane at the time of the crime, a defense which I will fully instruct you on later, then whether or not Jeffrey Karl Meyer was sane or not is irrelevant to the issue of this defendant's sanity.

Defendant contends that the Pattern Jury Instruction was insufficient to explain the law in the context of the facts in this case. Defendant contends that the jurors could have relied on Meyer's mental state to override any doubts they had about defendant's mental state and thereby find defendant guilty of the crimes by acting in concert.

When a request for instructions is correct in law and supported by the evidence in the case, the court must give the instruction in substance. *State v. Monk*, 291 N.C. 37, 229 S.E.2d 163 (1976). However, "the trial court is not required to give a requested instruction in the exact language of the request." *Id.* at 54, 229 S.E.2d at 174.

The State contends, *inter alia*, that the trial court gave the substance of the relevant portion of the requested instruction numerous times throughout the charge. The trial judge instructed the jury that if, as a result of the lack of mental capacity, *this defendant* did not have the specific intent to kill the deceased which was formed after some premeditation and .deliberation, then he would not be guilty of first degree murder. He then reminded the jury as follows, "Again, I point out to you that the lack of mental capacity as I am discussing it here is entirely separate and distinct from the affirmative defense of insanity." Our review of the jury instructions discloses a careful effort on the part of the trial judge to explain to the jury that the mental state of defendant, and not Meyer's mental state, is the relevant inquiry. We are satisfied that the instructions given by the trial judge were in substance those requested by defendant, except for the last sentence of the proposed instructions which should not have been given at that time. Thus, we find no error in failing to give the requested additional instructions.

[6] Defendant next takes issue with the trial court's refusal to grant his requested jury instruction regarding defendant's flight from the scene. Defendant's requested instruction cautioned the jury that it could not consider flight as evidence of premeditation and deliberation in order to convict him of murder in the first degree. Defendant contends that the trial judge should have instructed the jury on flight because 1) the evidence is uncontroverted that defendant left the scene of the murder, and 2) the prosecution argued, in a direct attempt to show premeditation and deliberation, that defendant and Meyer took steps on Fort Bragg to avoid apprehension by the military police. We do not agree that an instruction on flight was required in this case.

A trial judge is not required to instruct a jury on defendant's flight unless "there is some evidence in the record reasonably supporting the theory that defendant fled after commission of the crime charged." *State v. Levan*, 326 N.C. 155, 164-65, 388 S.E.2d

STATE v. THOMPSON

[328 N.C. 477 (1991)]

429, 435 (1990). Mere evidence that defendant left the scene of the crime is not enough to support an instruction on flight. There must also be some evidence that defendant took steps to avoid apprehension. *Id.* Here, the evidence showed that defendant and Meyer left the Kutz residence in defendant's truck after the crimes were committed. Defendant drove to Fort Bragg. Once defendant reached the military reservation, he mistakenly got off the main road and began driving along a road behind the officer's club which was considered an off-limits area. Defendant stopped his truck next to a dumpster behind the officer's club; however, upon seeing the military police car approaching his truck, defendant began to drive away. This evidence alone is not enough to warrant an instruction on flight.

Defendant argues that the evidence, when coupled with the prosecution's summation, is enough to require an instruction on flight. During summation, the prosecutor stated that once the defendant noticed the officer approaching his truck, he started to drive away. The prosecutor argued, "when they were pulled over, [defendant] had his driver's license in his hand." The defendant contends that this argument by the prosecutor was the equivalent of an argument that defendant was taking steps to avoid apprehension and thus required an instruction on flight. The State contends that the prosecutor's argument was made to show the jury that the behavior of the defendant when stopped suggested that he knew the consequences of his acts. Having reviewed the transcript of the jury argument, we agree with the State. Nowhere in the prosecutor's argument do we find any contention that there was flight by the defendant.

[7] Defendant's next assignment of error is that the trial court erred in failing to give the following requested jury instruction:

> While the intentional use of a deadly weapon may, in and of itself, give rise to a presumption that a killing was malicious, this fact alone is insufficient to sustain a finding of premeditation or deliberation.

This language is taken almost verbatim from *State v. Zuniga,* 320 N.C. 233, 258, 357 S.E.2d 898, 914 (1987). In *Zuniga,* this Court made that statement while conducting appellate review of the legal sufficiency of the evidence to support the jury's finding of premeditation and deliberation. The statement was not intended to be a jury instruction. It is confusing and not helpful to instruct a jury

in terms of what an appellate court will consider sufficient to sustain a jury finding. The proposed instruction is so couched, and it is therefore not an appropriate jury instruction.

In any event, a trial court is not required to give a requested instruction verbatim even when it is a correct statement of law, so long as the requested instruction is given in substance. *State v. Monk*, 291 N.C. 37, 229 S.E.2d 163. In the present case, the trial court gave defendant's requested instruction in substance by giving instructions on malice, intentional use of a deadly weapon, premeditation and deliberation, and second degree murder. The trial court also instructed the jury that if it found malice and unlawfulness the defendant would be guilty of second degree murder. Only upon an additional finding of premeditation and deliberation could the jury find defendant guilty of murder in the first degree. The instructions given by the trial judge accomplished the same result as the one-sentence statement from *Zuniga* which was requested by defendant. This assignment of error is without merit and rejected.

[8] Defendant next contends that the trial court committed reversible error in denying defendant's motion to exclude or limit the number of photographs of the victims' bodies introduced into evidence and repeatedly shown to the jury, and allowing the jury to view all the photographs again at the close of the State's evidence. It is defendant's contention that no relevant fact concerning the numerous insults to the bodies of the victims could be gleaned from the photographs that was not or could not otherwise have been testified to or presented by documentary evidence. Defendant argues that given the number of exhibits offered, their extraordinary gruesomeness, their detail, the fact that they were in color, and the fact that a number of them were close-ups of grotesquely distorted faces of the victims mandates a finding that most of the photographs admitted possessed little probative value relevant to the extraordinary prejudice to the defendant engendered by such admission.

Photographs of homicide victims are admissible at trial even if they are "gory, gruesome, horrible, or revolting, so long as they are used by a witness to illustrate his testimony and so long as an excessive number of photographs are not used solely to arouse the passions of the jury." *State v. Murphy*, 321 N.C. 738, 741, 365 S.E.2d 615, 617 (1988); *State v. Holden*, 321 N.C. 125, 362 S.E.2d

513 (1987). The use of photographs and slides of a victim to illustrate testimony of a witness for the State, if excessive and for the purpose of inflaming the jury, is prejudicial error necessitating a new trial. *State v. Hennis*, 323 N.C. 279, 372 S.E.2d 523 (1988) (State presented ninety-nine photographs, trial court allowed thirty-five photographs into evidence, which were shown on a large screen behind defendant's head).

In this case, we find that the ten photographs presented by the State were properly admitted into evidence. Although some of the photographs may be considered gruesome, they were relevant to illustrate the testimony of two State's witnesses and were not excessive or repetitious. Also, the trial court gave cautionary instructions on the use of the photographs for illustrative purposes, thus limiting the likelihood of unfair prejudice from use of the photographs. This assignment of error is rejected.

[9] In defendant's next assignment of error, he contends that the trial court erred during sentencing on the burglary and robbery convictions by finding as a nonstatutory factor in aggravation that the burglary and robberies were planned, premeditated and deliberate. Defendant argues that allowing the sentencing court to increase sentences for these offenses on the basis that the defendant planned, premeditated, and deliberated them would violate the rule that a factor should not be used to aggravate a sentence unless it makes the defendant more blameworthy than he already is as a result of committing the crime. *State v. Hines*, 314 N.C. 522, 335 S.E.2d 6 (1985).

Pursuant to N.C.G.S. § 15A-1340.4(a), a sentencing judge may consider any nonstatutory aggravating factor which is reasonably related to the purposes of sentencing and is proven by the preponderance of the evidence. One who commits a burglary or robbery which is meticulously planned, with substantial time and opportunity for the offender to change his mind, is arguably more blameworthy than one who commits the same crime on the spur of the moment. It is the *degree* of planning and deliberating that makes the crime more blameworthy. A factor that increases an offender's culpability is reasonably related to the purposes of sentencing. N.C.G.S. § 15A-1340.3 (1988).

Defendant further argues that since burglary and robbery are specific intent crimes, a certain amount of planning is inherent in the offenses; therefore, a finding in aggravation that defendant

planned the crime is improper. The State relies upon *State v. Chatman*, 308 N.C. 169, 301 S.E.2d 71 (1983), in which this Court upheld the finding of a nonstatutory aggravating factor that the offense was planned in a burglary and rape case. In *Chatman*, the defendant was convicted of first degree rape, first degree sexual offense, and first degree burglary. *Id.* at 171, 301 S.E.2d at 73. There was evidence presented that the defendant would drive around in his car at night and break into homes for the purpose of raping women. *Id.* at 180, 301 S.E.2d at 77. The defendant in *Chatman* argued that the evidence was insufficient to support a factor in aggravation that the offense was planned. This Court stated, "We reject defendant's position that in order to find that the offense was planned it was necessary to show that defendant methodically surveyed . . . houses or carefully chose a particular night before entering. The argument is specious. We find plenary evidence to support [a] finding [that the offense was planned]." *Id.*

In the present case, it is clear that defendant took extraordinary steps to prepare for the commission of the crimes. There was ample evidence apart from that presented to prove robbery and burglary to support the trial court's finding that defendant planned, premeditated, and deliberated the crimes. Here, defendant and Meyer were looking for an elderly couple who lived in a rural area to assassinate and rob in accordance with their game of Dungeons and Dragons. They had purchased Ninja clothing and a butterfly knife to be used when they found suitable victims. Defendant and Meyer followed Mrs. Kutz, an elderly woman, home from the grocery store. They found the Kutz home to be similar to the house described in the game of Dungeons and Dragons because the house had something like a moat around it. Later that night, defendant and Meyer drove near the Kutz home, parked the truck away from the house, approached the house on foot, entered and killed both victims by stabbing them to death.

The State has shown by a preponderance of the evidence the meticulous planning that preceded the actual commission of these crimes. It is apparent that what the sentencing judge actually found was that the extraordinary planning in this case exceeded that which is ordinarily present or inherent in the crimes of first degree burglary and robbery with a dangerous weapon. Thus, we find no error in the trial court's finding as a nonstatutory factor in aggravation that the burglary and robberies were planned. We

treat the additional finding that the offenses were premeditated and deliberate as surplusage.

**[10]** In defendant's last assignment of error, he contends that the trial court erred at sentencing on the burglary and robbery charges by finding in aggravation that defendant took advantage of the victims being helpless and defenseless. It is defendant's contention that the trial court made no additional factual findings supporting this nonstatutory aggravating factor. Defendant contends that the only two conceivable explanations for this finding in aggravation would have to be the age of the victims and the fact that they were sleeping when the defendant entered their home. Defendant notes that the Court of Appeals held in *State v. Underwood*, 84 N.C. App. 408, 352 S.E.2d 898 (1987), that the fact that the victim was asleep when defendant committed an assault with a deadly weapon inflicting serious injury was not a proper aggravating factor because the victim was in no worse position than any other unsuspecting victim.

In the present case, the evidence showed that defendant told his psychologist that he and Meyer had followed Mrs. Kutz home from the grocery store, found the characteristics of the house to their liking and decided to rob it. The evidence also showed that the defendant had been playing a game of Dungeons and Dragons which involved going into the house of an elderly couple living in a rural area and assassinating them. Mr. and Mrs. Kutz were both in their sixties and lived in a rural area. Mrs. Kutz was asleep when defendant and Meyer broke into the Kutz home and robbed them. This evidence supports a finding that the victims were vulnerable and helpless and that the defendant took advantage of their situation.

"Pursuant to the Fair Sentencing Act, the trial court is not confined to consideration of statutory factors only, but may consider nonstatutory factors to the extent they are 1) related to the purposes of sentencing and 2) supported by the evidence in the case." *State v. Taylor*, 322 N.C. 280, 287, 367 S.E.2d 664, 668 (1988). In *Taylor*, this Court held that a trial court could properly find as a nonstatutory aggravating factor that a defendant used information gained as a result of his inquiry to determine whether the victim would be alone and defendant's use of keys surreptitiously copied while they were entrusted to his wife.

In the present case, defendant knew that Mrs. Kutz was elderly, and he followed her home one evening, thus discovering that she lived in a rural area. The State contends that the victim being asleep is a particular vulnerability because it is a circumstance not inherent in most crimes, whereas lack of warning or lack of provocation is inherent in most crimes. We agree with the State. We believe that a person who is attacked while asleep is in a more vunerable position than one who is conscious of his surroundings. The sentencing judge did not err in considering the age of the victims, the location of their home in a rural area, and the fact that one of the victims was asleep at the time of the crime, in determining that defendant took advantage of the victims being helpless and defenseless. To the extent the Court of Appeals' decision in *Underwood* conflicts with this decision, we overrule it.

We conclude that defendant has had a fair trial, free of prejudicial error.

No error.