412 S.E.2d 339 (1992)
330 N.C. 728
STATE of North Carolina,
v.
Jeffrey Karl MEYER.
No. 177A89
Supreme Court of North Carolina.
January 27, 1992.
*340 Lacy H. Thornburg, Atty. Gen. by William N. Farrell, Jr., Sp. Deputy Atty. Gen., Raleigh, for State.
Malcolm Ray Hunter, Jr., Appellate Defender, Raleigh, for defendant-appellant.
FRYE, Justice.
Defendant, Jeffrey Karl Meyer, argues that the trial judge erred by refusing to grant his presentence motion to withdraw his pleas of guilty to two counts of first-degree murder. Defendant also argues that he is entitled to a new sentencing proceeding because the jury instructions were unconstitutional under McKoy v. North Carolina, 494 U.S. 433, 110 S.Ct. 1227, 108 L.Ed.2d 369 (1990). We hold that the trial judge did not err by refusing to grant defendant's motion to withdraw his guilty pleas, but that defendant is entitled to a new sentencing proceeding because of McKoy error.
Defendant was indicted by a Cumberland County Grand Jury on two counts of first-degree murder, two counts of robbery with a dangerous weapon and one count of first-degree burglary. On 12 May 1988, in Cumberland County Superior Court, defendant entered pleas of guilty to the robbery with a dangerous weapon and first-degree burglary charges. On 16 May 1988, in Cumberland County Superior Court, defendant entered pleas of guilty to the first-degree murder charges. On 17 May 1988, Judge E. Lynn Johnson accepted the pleas and adjudicated defendant guilty as charged. After finding aggravating and mitigating factors, Judge Johnson sentenced defendant to life imprisonment for first-degree burglary and two consecutive forty-year prison terms for the two robbery with a dangerous weapon convictions. These non-capital cases are not before the Court on this appeal.
On 3 June 1988, a jury was impanelled in Cumberland County Superior Court for a capital sentencing proceeding pursuant to N.C.G.S. § 15A-2000. On Sunday, 12 June 1988, during the presentation of defendant's evidence, defendant and another inmate escaped from the Cumberland County Jail. On 13 June 1988, after the opening of court, Judge Johnson continued the sentencing proceeding until the next day. On 14 June 1988, upon motion by defendant's attorney, Judge Johnson declared a mistrial.
*341 Defendant was apprehended on 19 June 1988. On 6 September 1988, prior to a new sentencing proceeding, defendant sought to withdraw his guilty pleas to the two counts of first-degree murder. This motion was denied by Judge Giles R. Clark. Defendant also sought a change of venue for the sentencing proceeding due to the publicity surrounding his escape. This motion was granted, and the sentencing proceeding was moved to New Hanover County. The jury recommended the death penalty for each of the two murders, and Judge Clark imposed the sentences on 16 November 1988. Defendant appeals to this Court as of right.

I.
A detailed recital of the facts of this brutal double murder is not necessary for resolution of the issues presented. We will therefore give an abbreviated version of the facts as developed during defendant's sentencing proceeding.
In the wee hours of the morning of 2 December 1986, a pickup truck driven by seventeen-year-old Mark Thompson[1] and defendant, then twenty, was stopped by Sergeant Robert Provalenko of the Fort Bragg Military Police. Both Thompson and defendant were employed by the U.S. Army on active duty at Fort Bragg. Numerous items were found in the vehicle, including jewelry, a small television, credit cards and papers bearing the name of Paul Kutz, a pair of nunchucks, two butterfly knives, a blow gun, two pairs of rubber gloves, nine pieces of black "Ninja" clothing, including two black hoods, four armbands, two black face masks and a black jacket, and two empty Ninja shoe boxes. At the time of his arrest, defendant was wearing distinctive black pants, no shirt, a pair of green socks with the toes cut out and V-toed shoes. The clothing worn by defendant and the clothing found in the vehicle are that of a Ninja warrior: an oriental assassin from feudal times, highly trained in martial arts and stealth, who dresses in black and slips in and out of places unheard and unseen.
On the evening of 1 December 1986, Paul Kutz, sixty-eight, and his wife, Janie Mae Meares Kutz, sixty-two, were at their home in Fayetteville, North Carolina. Cumberland County sheriff's deputies found the couple brutally murdered in the early morning hours of 2 December 1986. Both had been stabbed numerous times. Both had their throats cut.
Testimony at the sentencing proceeding placed defendant at the scene of the crime. A footwear impression lifted from a seat cushion in the Kutzes' home was consistent with the distinctive V-toed shoes worn by both defendant and Thompson on the night of the murder. Blood of the types consistent with both victims was found on defendant's clothing and knife. Fibers consistent with materials from the Kutzes' home were found on defendant's clothing and knife, and fibers consistent with the Ninja clothing worn by defendant and Thompson were found in the Kutzes' home.
The State also presented the testimony of Dale Wyatt, a member of the armed forces stationed at Fort Bragg. Mr. Wyatt met defendant in a holding cell at the Cumberland County Law Enforcement Center on 3 December 1986 while being held for failure to appear for a court date on a worthless check charge. Mr. Wyatt testified that defendant gave him the following account of what happened the night of the murders: defendant and another person had attempted to rob a house, believing the homeowners were away. When defendant entered the house, a man came toward him, so defendant shot him with a blow gun. When the man did not stop, defendant *342 stabbed him. Defendant also told Mr. Wyatt that he (defendant) had been dressed as a Ninja at the time of the crime.
Defendant presented psychiatric testimony which indicated that, at the time of the crimes, he suffered from a dissociative personality disorder, a mental illness which causes the person to detach himself from reality. Specifically, Dr. Selwyn Rose testified that defendant was obsessed with Dungeons and Dragons, a role-playing, fantasy-adventure game set in medieval times, and that his mental disorder caused defendant to retreat into a fantasy world of Ninja warriors. "The thrust was that [defendant] was going to make points in the Dungeons and Dragons game; that he wanted to prove that he could slip in and out of a house and not be seen like a great Ninja," Dr. Rose testified.
Another psychiatrist, Dr. Thomas E. Radecki, testified that defendant "was so out of touch with reality ... I don't think that he really appreciated that he was really killing people. I think that he was living out a game, living out a fantasy.... I really don't think he appreciated really seriously what he was doing. He's a very sick man...."

II.
Defendant contends that the trial court erred by refusing to grant his motion to withdraw his pleas of guilty to two counts of first-degree murder. Defendant does not argue that the guilty pleas were improperly adjudicated, only that the trial judge erred by denying his subsequent motion to withdraw the pleas. The State argues that the trial judge correctly denied the motion because defendant presented no fair and just reason why he should be allowed to withdraw his guilty pleas. We agree with the State.
In State v. Handy, 326 N.C. 532, 391 S.E.2d 159 (1990), this Court held that a "presentence motion to withdraw a plea of guilty should be allowed for any fair and just reason." Id. at 539, 391 S.E.2d at 162. Although there is no absolute right to withdraw a guilty plea, "withdrawal motions made prior to sentencing, and especially at a very early stage of the proceedings, should be granted with liberality." Id. at 537, 391 S.E.2d at 162. After a thorough review of case law from other jurisdictions, this Court listed several factors which favor the granting of a presentence motion to withdraw guilty pleas.
Some of the factors which favor withdrawal include whether the defendant has asserted his legal innocence, the strength of the State's proffer of evidence, the length of time between entry of the guilty plea and the desire to change it, and whether the accused has had competent counsel at all relevant times. Misunderstanding of the consequences of a guilty plea, hasty entry, confusion, and coercion are also factors for consideration.
Id. at 539, 391 S.E.2d at 163 (citation omitted). After a defendant has come forward with a "fair and just reason" in support of his motion to withdraw, the State "may refute the movant's showing by evidence of concrete prejudice to its case by reason of the withdrawal of the plea." Id.
In this case, defendant pleaded guilty to two counts of first-degree murder on 16 May 1988. During the sentencing proceeding, defendant escaped from jail, causing a mistrial to be declared. After his recapture, defendant sought to withdraw his pleas of guilty. In his motion to withdraw, defendant cited a "change of circumstances" as the reason for his decision to change his pleas to not guilty. Because of his escape from jail, defendant said, "media coverage of the case and escape was extensive." No other reason was given in support of his motion. Defendant's attorneys, experienced public defenders, offered no additional reasons to support the motion when it came before Judge Clark. Based upon defendant's written motion, Judge Clark ruled that "in the absence of a showing of some circumstances which would justify the withdrawal, ... his pleas should stand, and no such circumstances having been made to appear, [the] Court is of the opinion that the Defendant's motions to withdraw his pleas of guilty should be and the same [are] hereby denied." Although *343 Judge Clark did not have the benefit of Handy when he made his ruling, we believe his decision is consistent with the test outlined in that case.
Although a change of circumstances might, under the facts of a given case, constitute a fair and just reason for allowing the withdrawal of a guilty plea prior to sentencing, a change of circumstances does not in itself mandate that such a motion be granted. Instead, a court must look to the facts of each case to determine whether a defendant has come forward with a fair and just reason to allow withdrawal of his guilty pleas.
Turning then to the facts of this case, we find none of the factors favoring withdrawal outlined in Handy to be present. See Handy, 326 N.C. at 539, 391 S.E.2d at 163. Perhaps most importantly, defendant in this case, unlike the defendant in Handy, has not asserted his "legal innocence." In Handy, the defendant pleaded guilty to felony murder based on the underlying charge of armed robbery. The following morning, the defendant told the trial judge that he had felt "under pressure" to plead guilty, and that after praying about it overnight and talking with his mother and attorneys, he believed he was not actually guilty of first-degree murder. Id. at 541, 391 S.E.2d at 164. In this case, defendant sought to withdraw his guilty pleas not because he believed he was innocent of the crimes charged, but because of the extensive media coverage generated by his escape.[2]
Consideration of the other factors cited in Handy do not help defendant. The State's case is exceptionally strong. There is no evidence, and defendant does not argue, that he did not have competent counsel, that he misunderstood the consequences of his guilty plea, that his plea was entered in haste or that he was confused or coerced at the time he pleaded guilty. And finally, defendant's motion to withdraw his guilty pleas came more than three and one-half months after he pleaded guilty and after his first sentencing proceeding was cut short by his escape. Cf. Handy, 326 N.C. at 540, 391 S.E.2d at 163 (defendant sought to withdraw his guilty plea less than twenty-four hours after he initially offered it and prior to the beginning of jury selection).
Defendant suggests, however, that unless the State can show "concrete prejudice" to its case, the motion to withdraw should be granted. Defendant misreads Handy. Although Handy notes that the State may refute a defendant's motion to withdraw by evidence of concrete prejudice, id. at 539, 391 S.E.2d at 163, the State need not even address this issue until the defendant has asserted a fair and just reason why he should be permitted to withdraw his guilty pleas. See United States v. Haley, 784 F.2d 1218, 1219 (4th Cir.1986) (only after defendant has established a just and fair reason is it appropriate to consider whether the government would be prejudiced). Accord United States v. Alvarez-Quiroga, 901 F.2d 1433, 1439 (7th Cir. 1990); United States v. Rojas, 898 F.2d 40, 43 (5th Cir.1990).
Based on the facts of this case, we hold that defendant has not proffered a fair and just reason why he should be permitted to withdraw his guilty pleas; therefore, the trial judge did not err by denying defendant's motion.

III.
In his next twelve arguments, defendant contends that the trial judge committed errors entitling him to a new sentencing proceeding. Because we find defendant is entitled to a new sentencing proceeding under McKoy, we address only that issue. State v. Robinson, 330 N.C. 1, 31, 409 S.E.2d 288, 305 (1991).
Defendant argues the trial judge erred by instructing jurors that they could not consider any mitigating circumstance when making the final sentencing determination unless the mitigating circumstance *344 was found by all twelve jurors. See McKoy v. North Carolina, 494 U.S. 433, 110 S.Ct. 1227, 108 L.Ed.2d 369. Defendant argues that the McKoy error in this case was not harmless beyond a reasonable doubt because jurors failed to find six of the seventeen mitigating circumstances submitted, including two statutory circumstances, and that there was credible evidence to support at least one of these six.
Because McKoy error is of constitutional magnitude, the State bears the burden of demonstrating that it was harmless beyond a reasonable doubt. State v. McKoy, 327 N.C. 31, 44, 394 S.E.2d 426, 433 (1990); N.C.G.S. § 15A-1443(b) (1988). The State acknowledges that the jury instructions in this case were unconstitutional under McKoy and that it is unable to distinguish this case from other decisions in which this Court has ordered new sentencing proceedings. The State "acknowledges therefore that this Court is required to order a new capital sentencing proceeding because of McKoy error." We agree.
Of the six submitted but unfound mitigating circumstances, we need only address one: the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was impaired.[3] Defendant, at his sentencing proceeding, presented psychiatric evidence to support this mitigating circumstance. Dr. Radecki testified that defendant was "living out his fantasies of a game of Dungeons and Dragons and of his tremendous fascination with martial arts, Ninja martial arts, which are a very violent form." Dr. Radecki further testified that he did not think defendant "really appreciated that he was really killing people. I think he was living out a game, living out a fantasy.... I really don't think that he appreciated really seriously what he was doing."
We agree with defendant that he presented credible evidence from which at least one juror could have reasonably found this mitigating circumstance to exist. Furthermore, we cannot say beyond a reasonable doubt that no juror, upon weighing this circumstance along with the other mitigating circumstances, could have concluded that life imprisonment rather than death was the appropriate punishment. Defendant is therefore entitled to a new sentencing proceeding.
For the foregoing reasons, we conclude that the trial court did not err in rejecting defendant's motion to withdraw his guilty pleas. However, error in the sentencing proceeding requires that the death sentence be vacated and this case be remanded to the Superior Court, New Hanover County, for a new capital sentencing proceeding.
NO ERROR IN GUILT PHASE; DEATH SENTENCE VACATED; REMANDED FOR A NEW CAPITAL SENTENCING PROCEEDING.
NOTES
[1] Thompson was indicted on two counts of first-degree murder, first-degree burglary and two counts of robbery with a dangerous weapon. State v. Thompson, 328 N.C. 477, 481, 402 S.E.2d 386, 387-88 (1991). Thompson pleaded not guilty by reason of insanity but was convicted on all five counts. Id. at 483, 402 S.E.2d at 388-89. He was sentenced to two consecutive terms of life imprisonment for the murder charges, an additional consecutive term of life imprisonment for the burglary charge and forty years' imprisonment for the combined counts of robbery with a dangerous weapon. Id. Thompson's convictions and sentences were upheld by this Court on 3 April 1991. Thompson, 328 N.C. 477, 402 S.E.2d 386.
[2] We note that defendant's motion for a change of venue, also based on extensive media coverage, was granted by the trial judge.
[3] This mitigating circumstance is statutory, N.C.G.S. § 15A-2000(f)(6), and thus, if found, is presumed to have mitigating value as a matter of law. State v. Quick, 329 N.C. 1, 34, 405 S.E.2d 179, 199 (1991).