STATE OF NORTH CAROLINA
v.
TONY RAY PARKER
No. COA08-989
Court of Appeals of North Carolina
Filed May 5, 2009
This case not for publication
Attorney General Roy A. Cooper, III, by Assistant Attorney General Margaret A. Force, for the State.
Michael E. Casterline, for defendant-appellant.
JACKSON, Judge.
Tony Ray Parker ("defendant") appeals from judgments consistent with jury verdicts finding him guilty of six counts of indecent liberties with a minor. For the following reasons, we hold no error.
Defendant married Kimberly L. ("Kimberly") in June 1995. Thereafter, defendant moved in with Kimberly and her three children, daughter K.L., age nine, son T.J., age six, and daughter P.L., age five. The family lived in a single-wide trailer in Kimberly's parents' back yard. In 2000, the family moved to a double-wide trailer on property they purchased near Kimberly'sparents. Kimberly often worked two jobs and defendant was left alone with the children.
When the family lived in the single-wide trailer and K.L. was approximately in the fifth grade, defendant started touching her vaginal area and breasts. After they moved to the double-wide trailer, defendant put his fingers in K.L.'s vagina, and, towards the end of her junior year in high school, defendant put his penis inside K.L.'s vagina. Defendant also began touching P.L. when she was thirteen or fourteen years old. About once a week, defendant touched P.L.'s breasts and her vaginal area both over her clothes and inside her under pants. Defendant threatened K.L. and P.L. and told them not to tell or else there would be "bad consequences."
In November or December 2003, P.L. told her mother about the touching. When Kimberly confronted defendant, he became very angry and denied the allegations. He told P.L. that he was so mad at her that he could "wring her chicken neck." Kimberly did not go to the sheriff at that time because "we knew better than to call the law." She knew that defendant was violent when he was upset since defendant had given her black eyes on more than one occasion, and he had hit her son more than once. In July 2004, when Kimberly's mother died and Kimberly and her children were staying at her father's house, P.L. told Kimberly about another incident of inappropriate touching by defendant. K.L. confided in her sister, P.L., that defendant also had touched her, and the two told their mother. Kimberly did not confront defendant immediately. Instead, Kimberly wanted to get defendant out of the house without drawing attention to her children.
Defendant agreed to leave the house in late July 2004. After he left the house, Kimberly asked defendant if he had had sex with K.L. Defendant responded, "it wasn't sex and she should not have told [you]." Kimberly later confronted defendant with the girls' allegations, which defendant continued to deny. After July 2004, defendant returned to the trailer three or four times on the weekends when the children were staying at their grandfather's house.
On 23 December 2004, defendant returned to the trailer and threatened Kimberly with a pocket knife. At the time, the children were staying at their grand father's for the holidays. Kimberly tried to convince defendant to leave, but he was determined to stay at the trailer. Kimberly tried to leave the trailer, but defendant became upset, threw her pocketbook at her, and "got in her face."
On 3 January 2005, when defendant still had not left the trailer, Kimberly went to the Rowan County Sheriff's Department to file a complaint because of the assaults on the children. Kimberly spoke with Detective Debbie Yokely and Investigator Robin Shue ("Investigator Shue"). Investigator Shue interviewed the children regarding the allegations of sexual abuse against P.L. and K.L. K.L. told Investigator Shue that (1) defendant started touching her "from the very beginning;" (2) defendant would touch her groin area and her chest; and (3) the sexual incidents occurred "every day" until defendant stopped in K.L.'s senior year of high school. P.L. told Investigator Shue that defendant touched her at least once a week since the seventh grade. Domestic warrants for defendant's arrest were issued immediately on domestic assault and domestic communicating threats charges. Warrants for defendant's arrest for indecent liberties with P.L. were issued on 21 January 2005 and for indecent liberties with K.L. in May 2007.
On 4 January 2005, a Rowan County Deputy Sheriff attempted to serve the warrants on defendant at the double-wide trailer, but defendant was not at home. That same day, the Mooresville police set up a license checkpoint in a neighboring county. A police officer at the check point observed a vehicle abruptly turn away in advance of the checkpoint. The officer followed the vehicle in his patrol car to a cul-de-sac. Without any direction to do so, defendant exited the vehicle with his hands in the air, laid face down on the roadway, and went into a spread-eagle position. When the officer asked defendant what he was doing, he heard defendant say "something to the effect that he thought we had the checkpoint set up for him and that we were looking for him." A warrant check showed outstanding warrants for defendant in Rowan County. Defendant was transported back to the county line and picked up by a Sheriff's Deputy. While en route to the Magistrate's office, defendant told the deputy that "if he could have avoided that checkpoint in Mooresville that he'd have been in Florida by the morning."
A jury found defendant guilty of six counts of taking indecent liberties with a child. The trial court sentenced defendant to six consecutive sentences of eighteen to twenty-three months imprisonment, with the sixth sentence suspended pending completion of thirty months supervised probation.
In his sole argument on appeal, defendant contends the trial court erred by overruling his objection and instructing the jury on defendant's flight. Defendant argues that the instruction was not supported by the evidence and that the instruction was prejudicial to him.
"A flight instruction is proper `[s]o long as there is some evidence in the record reasonably supporting the theory that defendant fled after commission of the crime charged.'" State v. Norwood, 344 N.C. 511, 534, 476 S.E.2d 349, 359 (1996) (quoting State v. Irick, 291 N.C. 480, 494, 231 S.E.2d 833, 842 (1977)), cert. denied, 520 U.S. 1158, 137 L. Ed. 2d 500 (1997). "Mere evidence that defendant left the scene of the crime is not enough to support an instruction on flight. There must also be some evidence that defendant took steps to avoid apprehension." State v. Thompson, 328 N.C. 477, 490, 402 S.E.2d 386, 392 (1991).
Here, the evidence presented reveals that (1) defendant had touched P.L. and K.L. in appropriately while living with them; (2) P.L. and K.L. told their mother about the sexual assaults in July 2004; (3) defendant left the trailer after Kimberly confronted defendant in July 2004; (4) defendant returned to the trailer on 23 December 2004 while the children were staying with their grandfather; (5) Kimberly went to law enforcement on 3 January 2005 to file complaints regarding the assaults on K.L. and P.L.; and(6) on 4 January 2005, after Kimberly had gone to the police regarding assaults on K.L. and P.L., a police officer observed defendant avoiding a license check point. Therefore, "`there is some evidence in the record reasonably supporting the theory that defendant fled after commission of the crime charged.'" Norwood, 344 N.C. at 534, 476 S.E.2d at 359 (quoting State v. Irick, 291 N.C. 480, 494, 231 S.E.2d 833, 842 (1977)). Accordingly, we hold that the trial court did not err in instructing the jury on defendant's flight.
No error.
Judges McGEE and Robert C. HUNTER concur.
Report per Rule 30(e).