An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA14-40
NORTH CAROLINA COURT OF APPEALS

Filed: 1 July 2014

STATE OF NORTH CAROLINA

v.                                    Johnston County
                                      No. 12CRS002813
TERRY LYNN HALL
      Defendant.


Appeal by Defendant from judgment entered 28 June 2013 by Judge Kendra D. Hill in Johnston County Superior Court. Heard in the Court of Appeals on 5 May 2014.

> *Attorney General Roy A. Cooper, III, by Special Deputy Attorney General Harriet F. Worley, for the State.*
>
> *Sharon L. Smith, for Defendant-appellant.*


DILLON, Judge.


Terry Lynn Hall ("Defendant") appeals from convictions for two counts of assault with a deadly weapon, felony possession of cocaine, and attaining the status of an habitual felon. For the following reasons, we find no error in Defendant's trial.

Defendant was indicted separately on one charge of felony possession of cocaine, two counts of assault with a deadly weapon with intent to kill inflicting serious injury and for

attaining the status of habitual felon.  Defendant was tried on these charges at the 24 June 2013 Criminal Session of Johnston County Superior Court.  The State's evidence tended to show that shortly after midnight on 10 August 2012, Willie James Walker, who lived in a homeless shelter in Raleigh, had been drinking beer and using cocaine, and went to the parking lot of a service station in Smithfield to panhandle.  Mr. Walker observed Defendant in the parking lot and approached Defendant to ask him what he wanted.  Defendant told him that he was looking to buy some crack cocaine.  Mr. Walker told Defendant that he knew someone that sold crack cocaine just around the corner and he would take him there.  Mr. Walker hoped that if he helped Defendant get some, he would share with him.  After he rode down the street in Defendant's car and stopped, Defendant gave Mr. Walker a one-hundred dollar bill, even though he only wanted fifty-dollars-worth of crack cocaine, and Defendant wanted his change.

Mr. Walker ultimately found Willie Watson, who told him where he could buy some cocaine.  However, before Mr. Walker could go buy the cocaine, Defendant got out of his car and started fighting with Mr. Watson, and then he started cutting both Mr. Walker and Mr. Watson with a razor blade knife.  Mr.

Walker testified that it was Defendant who started the fight. Mr. Walker testified that after Defendant attacked them, he and Mr. Watson ran into some bushes to hide. Defendant, however, got back into his car and came after them, running his car into Mr. Walker's right side and knocking Mr. Walker against a tree. Defendant retrieved his money from Mr. Walker, then hit a picket fence before leaving the scene in his car.

Officer Victor Denoble, of the Smithfield Police Department, responded to a call and arrived at the scene around 12:25 a.m. where he discovered fencing, wooden posts and debris in the roadway. Mr. Walker was lying down on the side of the road covered in blood, and Mr. Watson was waiving at Officer Denoble to stop. Mr. Watson, while pointing down the street, said, "He's down there, he's down there[.]" Officer Denoble saw Defendant's vehicle getting ready to make a left hand turn and initiated a stop on the vehicle. Upon approaching the vehicle, Office Denoble saw blood on the side of Defendant's car door and on Defendant's shirt. He placed Defendant in handcuffs. Upon further inspection of the area, Officer Denoble found a piece of the same type of fencing he observed in the roadway stuck in the left side wheel well of Defendant's car, a green razor blade knife on the floorboard of the car underneath the steering

wheel, and a fifty dollar bill covered in blood 10 to 15 feet from Defendant's car. Officer Denoble arrested Defendant and took him to the Smithfield Police Department.

Other officers arrived at the crime scene and observed that someone had backed into a picket fence in someone's yard as there were pieces of vehicle metal molding and a reflector on the back side of the damaged fence. They also observed damage to Defendant's car, as it appeared it was missing the piece of molding and reflector which matched the fender collected at the crime scene.

As a result of this altercation, Mr. Walker was treated for lacerations to his left jaw, left forearm, stomach, and back and was given intravenous fluids due to a risk of going into shock from the loss of blood. Likewise, Mr. Watson was treated for lacerations to his side, back, and neck. The laceration on his neck was deep and wide and close to the jugular vein and carotid artery.

Defendant testified at trial that he acted in self-defense as he feared that Mr. Watson and Mr. Walker were going to rob him. Defendant also testified that after he cut both victims, one of them told him to wait while he gave him his money back. Defendant waited in his car and one of the victims went into a

house and returned with Defendant's $50 and gave it to him, while he was bleeding. However, Defendant admitted that he never saw either Mr. Walker or Mr. Watson with a weapon before he cut them and that he was taller and younger than either of them. Defendant also testified that he did not remember hitting the fence because it was "foggy" and "messy" outside, and he was "terrified trying to get away from [that] place."

On 27 June 2013, a jury found Defendant guilty of two counts of assault with a deadly weapon inflicting serious injury. Defendant pled guilty to the charge of felony possession of cocaine and of attaining the status of an habitual felon, while reserving the right to appeal his convictions for assault with a deadly weapon inflicting serious injury. The trial court consolidated Defendant's convictions and sentenced him based on his habitual felony status to a term of 88 to 118 months of imprisonment. Defendant gave oral notice of appeal.

_____

In his only argument on appeal, Defendant, citing *State v. Thompson*, 328 N.C. 477, 402 S.E.2d 386 (1991) and *State v. Holland*, 161 N.C. App. 326, 588 S.E.2d 32 (2003), contends that the trial court erred in instructing the jury on flight because there was no evidence showing that his departure from the crime

scene "was carried out with a consciousness of guilt and in an effort to avoid apprehension or prosecution" because he was not speeding or driving erratically to elude police and did not dispose of the razor blade knife or attempt to destroy evidence. Defendant contends that the evidence shows that he merely left the scene of the fight because he was "terrified", which is insufficient to support an instruction on flight. Defendant concludes that this instruction regarding flight was prejudicial to his self-defense argument at trial and therefore he is entitled to a new trial.

As a general rule, a defendant's flight is admissible as evidence of guilt, *State v. Self*, 280 N.C. 665, 672, 187 S.E.2d 93, 97 (1972), but does not create a presumption of guilt but may be considered with other factors "in deciding whether the circumstances amount to an admission of guilt or reflect a consciousness of guilt." *State v. Rainey*, 198 N.C. App. 427, 439, 680 S.E.2d 760, 770 (citation and quotation marks omitted), *appeal dismissed and disc. review denied*, 363 N.C. 661, 686 S.E.2d 903 (2009). "A flight instruction is proper so long as there is some evidence in the record reasonably supporting the theory that defendant fled after commission of the crime charged . . . . The fact that there may be other reasonable

explanations for defendant's conduct does not render the instruction improper." *State v. Norwood*, 344 N.C. 511, 534, 476 S.E.2d 349, 359 (1996) (citation and quotation marks omitted), *cert. denied*, 520 U.S. 1158, 137 L. Ed. 2d 500 (1997). However, "[m]ere evidence that defendant left the scene of the crime is not enough to support an instruction on flight[;] [t]here] must also be some evidence that defendant took steps to avoid apprehension." *State v. Blakeney*, 352 N.C. 287, 314, 531 S.E.2d 799, 819 (2000). Also, "[e]vidence that the defendant hurriedly left the crime scene without rendering assistance to the . . . victim may warrant an instruction on flight." *State v. Taylor*, 362 N.C. 514, 540, 669 S.E.2d 239, 262 (2008). When a defendant challenges a jury instruction, in making our determination we consider the evidence presented in the light most favorable to the State. *Norwood*, 344 N.C. at 535, 476 S.E.2d at 360. "[Arguments] challenging the trial court's decisions regarding jury instructions are reviewed *de novo* by this Court." *State v. Osorio*, 196 N.C. App. 458, 466, 675 S.E.2d 144, 149 (2009). "Where jury instructions are given without supporting evidence, a new trial is required." *State v. Porter*, 340 N.C. 320, 331, 457 S.E.2d 716, 721 (1995) (citation omitted).

Over Defendant's objection, the trial court gave the following jury instruction as to flight:

> Evidence of flight may be considered by you together with all other facts and circumstances in this case in determining whether the combined circumstances amount to an admission or show a consciousness of guilt. However, proof of this circumstance is not sufficient in itself to establish Defendant's guilt.

This instruction was justified as the State presented "some evidence . . . reasonably supporting" the theory that Defendant quickly fled the crime scene. See *Norwood*, 344 N.C. at 534, 476 S.E.2d at 359. Evidence was presented that as he was leaving Defendant backed his car into a picket fence in someone's yard with enough force to destroy part of it and leave it strewn in the roadway, along with part his car's fender at the scene. Officer Denoble observed Defendant leaving the scene and after he stopped him, noticed part of the fence lodged in his wheel fender. Also, there was evidence presented that Defendant attempted to dispose of evidence, namely the bloody $50 bill that was found by police 10-15 feet outside Defendant's car after he was stopped by police, showing some "consciousness of guilt[,]" *see Rainey*, 198 N.C. App. at 439, 680 S.E.2d at 770, and that he was taking steps to "avoid apprehension[.]" *See Blakeney*, 352 N.C. at 314, 531 S.E.2d at 819. Further, there

was evidence which showed that he "hurriedly left the crime scene without rendering assistance" to Mr. Watson and Mr. Walker after he cut them multiple times with a razor blade knife and struck Mr. Walker with his car. *See Taylor*, 362 N.C. at 540, 699 S.E.2d at 262. Considering this evidence in the light most favorable to the State, we hold that this was sufficient evidence to establish that Defendant did more than just leave the scene. Furthermore, the trial court instructed that evidence of flight was "not sufficient in itself to establish Defendant's guilt." Accordingly, we find no merit in Defendant's arguments.

We find the cases cited by Defendant in support of his argument distinguishable from the facts before us. In *State v. Thompson*, 328 N.C. 477, 402 S.E.2d 386 (1991), the trial court denied the defendant's request for a jury instruction "caution[ing] the jury that it could not consider flight as evidence of premeditation and deliberation in order to convict him of murder in the first degree." *Id.* at 489, 402 S.E.2d at 392. Our Supreme Court, in agreeing with the trial court, noted that evidence was presented that the defendant left the scene of the stabbings, drove towards Fort Bragg where he was stationed, mistakenly turned and drove down a road leading to an off-limits

area, and, upon seeing military police, starting driving away. *Id.* at 490, 402 S.E.2d at 392-93. The Court held that "[t]his evidence alone is not enough to warrant an instruction on flight." *Id.* at 490, 402 S.E.2d at 393.

In *State v. Holland*, 161 N.C. App. 326, 588 S.E.2d 32 (2003), we held that an instruction on flight was inappropriate where there was no evidence showing that the defendant tried to avoid apprehension as the "defendant left the crime scene with his accomplices and drove to the home of one of the accomplices. Following this, defendant was driven to a girlfriend's residence." *Id.* at 330, 588 S.E.2d at 36 (holding that "[v]isiting a friend at their residence is not an act that, by itself, raises a reasonable inference that defendant was attempting to avoid apprehension"). In the present case, however, unlike *Thompson* and *Holland*, there was evidence that Defendant did more than merely drive away from the scene to go to another destination, as described above.

Accordingly, we find no error in the trial court's instruction to the jury.

NO ERROR

Chief Judge MARTIN and Judge STEELMAN concur.

Report per Rule 30(e).