STATE OF NORTH CAROLINA v. DENNIS RAY UNDERWOOD

No. 8615SC582

(Filed 17 February 1987)

**1. Criminal Law § 75.8— right to counsel invoked—arrest warrant read—no initiation of conversation or interrogation**

> An officer's delivery and reading of arrest warrants to defendant after he had invoked his right to counsel did not amount to an initiation of conversation or interrogation so as to require suppression of defendant's subsequent written statement.

**2. Homicide § 8.1— voluntary intoxication—instruction on defense not required**

> Though there was evidence that defendant had used drugs on the night of the crimes charged, the evidence did not support a finding by the trial court that defendant was intoxicated, and the trial court did not err in failing to charge on the defense of voluntary intoxication.

**3. Criminal Law § 138.29— victim asleep as aggravating factor—error**

> The trial court erred in finding as an aggravating factor at sentencing for assault with a deadly weapon inflicting serious injury that the victim was asleep at the time of the assault, since the victim's vulnerability was no greater than that ordinarily present in a felonious assault on any unsuspecting victim.

APPEAL by defendant from *Battle, Judge.* Judgments entered 15 January 1986 in Superior Court, ORANGE County. Heard in the Court of Appeals 18 November 1986.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Elisha H. Bunting, Jr., for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender Louis D. Bilionis, for defendant appellant.*

ORR, Judge.

Defendant Dennis Ray Underwood was convicted in a jury trial of second-degree murder, assault with a deadly weapon inflicting serious injury, and misdemeanor larceny. He received a twenty year sentence for the murder conviction, a ten year sentence for the assault conviction, and a two year sentence for the larceny conviction, with all sentences to run consecutively. On appeal defendant contends he is entitled to either a new trial, or in the alternative, a new sentencing hearing in each of the three convictions.

Defendant assigns as error (1) the trial court's denial of his motion to suppress his statement given on 5 August 1985; (2) the trial court's refusal to submit to the jury the lesser included offense of voluntary manslaughter; (3) the trial court's failure to instruct the jury on the defense of voluntary impairment to the charge of misdemeanor larceny; (4) the trial court's submission of additional instructions to the jury on the charge of misdemeanor larceny; (5) the trial court's failure to find as a mitigating factor in sentencing that defendant grew up in an environment lacking in the necessary guidance and structure; and (6) the trial court's finding as an aggravating factor in sentencing defendant for assault with a deadly weapon inflicting serious injury that the victim was asleep at the time of the assault.

We find error in the trial court's consideration of the victim's sleeping state at the time of assault as a factor in aggravation of defendant's sentence received for the assault. We find, however, no merit in defendant's remaining assignments of error.

The State's evidence tended to show that at the time of the offenses charged defendant had shared a rented trailer with a married couple, Mitchell and Tracy Joyner, for over a month. On 2 August 1985, Mitchell Joyner invited a friend, Donald Raynor, to spend the night at the trailer. Mitchell and Donald left work, picked up Tracy in Durham, and spent the rest of the evening in Durham, returning to the trailer at approximately 10:00 p.m. Defendant returned to the trailer about ten minutes after the Joyners and Raynor had arrived. The Joyners and defendant walked to the trailer of a neighbor, Cherry Bland. The evidence was that everyone at Bland's smoked marijuana, then Mitchell bought some "crank," an amphetamine. The Joyners returned home leaving defendant at Bland's trailer. Raynor had remained at the Joyner's trailer watching television, and when Mitchell and Tracy returned, all three split the amphetamine. Shortly thereafter, at approximately 11:30 p.m., the Joyners went to a bed in the back of the trailer, and Raynor prepared to sleep on the living room couch. At this time, defendant had not returned to the trailer. Bland testified that defendant left her trailer around 12:30 a.m. after telling her he was going back to his trailer.

Tracy Joyner testified that she awoke to see defendant standing next to her side of the bed. Defendant reached across

her and struck her sleeping husband, Mitchell, in the head with a hammer. Tracy, at defendant's direction, followed defendant into the living room, where she saw defendant strike Raynor in the back of the head with the hammer killing him. Then Tracy, again at the defendant's direction, returned to the bedroom, removed all her husband's money from his wallet, and took the money to defendant, who was in the living room taking money out of Raynor's pants pocket.

Defendant and Tracy left the trailer in Mitchell Joyner's white Mustang with defendant driving. At approximately 3:30 a.m. defendant and Tracy rented a room at the Happy Inn in Durham, where they spent the remainder of the night. The next morning, 3 August 1985, at approximately 7:00 a.m., Tracy called friends, who picked her up at the motel and took her back to the trailer. Tracy was then persuaded to call the police.

Defendant was subsequently arrested for murder, assault, and larceny. At the police station, after his arrest, defendant invoked his sixth amendment right to counsel and was placed in a jail cell. A short time later Officer Collins, who was present when defendant invoked his right to counsel, delivered and read to defendant the contents of the arrest warrants. Shortly thereafter defendant notified a jailer that he wished to speak with Officer Collins. After receiving and waiving his *Miranda* rights, defendant proceeded to give the police a statement. Defendant's statement was introduced into evidence at trial. Defendant was convicted of the charges. At the sentencing hearing the trial court found as an aggravating factor that defendant had prior convictions for criminal offenses punishable by more than sixty days' confinement and that the victim was asleep when assaulted by defendant.

## I.

[1] Defendant first contends that his written statement was taken in violation of *Edwards v. Arizona*, 451 U.S. 477, 68 L.Ed. 2d 378, *reh'g denied*, 452 U.S. 973, 69 L.Ed. 2d 984 (1981). In *Edwards*, the United States Supreme Court held that once a suspected criminal invokes his right to counsel he may not be questioned further until counsel is provided. However, if the suspected criminal, himself, initiates the dialogue, he may waive his right to have an attorney present. Defendant argues that Of-

ficer Collins' formal delivery and reading of the arrest warrants
to defendant constituted the initiation of conversation by someone
other than defendant. It was thus, according to defendant, im-
proper interrogation, and the State is prohibited from using the
statement at defendant's trial.

*Edwards* does not prohibit all interaction between the ac-
cused and law enforcement officers. As noted by the United
States Supreme Court in *Oregon v. Bradshaw*, 462 U.S. 1039, 77
L.Ed. 2d 405 (1983), when discussing *Edwards*, "[s]uch inquiries or
statements, by either an accused or a police officer, relating to
routine incidents of the custodial relationship, will not generally
'initiate' a conversation in the sense in which that word was used
in *Edwards*." 462 U.S. at 1045, 77 L.Ed. 2d at 412.

We conclude that Officer Collins' delivery and reading of the
arrest warrants was not an initiation of conversation or interroga-
tion as that term was used in *Edwards*. When a defendant is ar-
rested pursuant to an arrest warrant, N.C.G.S. § 15A-401(a)(2)
requires the arrest warrant to be served upon the defendant, as
soon as possible. In the case *sub judice*, the warrants were not
available for service at the time of arrest. The fact that delivery
and reading of the warrants was made after a request for an at-
torney does not alter the routineness of such delivery nor does it
constitute the initiation of questioning. *See Rhode Island v. Innis*,
446 U.S. 291, 64 L.Ed. 2d 297 (1980) (interrogation refers to not
only express questioning, "but also to any words or actions on the
part of the police (*other than those normally attendant to arrest
and custody*) that the police should know are reasonably likely to
elicit an incriminating response. . . .").

Likewise, defendant initiated the conversation with Officer
Collins after Collins had read the warrants and left. *See also
State v. Williams*, 314 N.C. 337, 333 S.E. 2d 708 (1985). We find no
error.

## II.

[2]  Defendant next contends that the trial court erred in deny-
ing his request for an instruction on his voluntary intoxication.
Defendant claims that such intoxication raised reasonable doubt
as to his capacity to form the specific intent required for convic-
tion of larceny. We disagree.

> To make the defense of voluntary intoxication available to defendant, the evidence must show that at the time of the [offense] the defendant's mind and reason were so completely intoxicated and overthrown that he could not form a specific intent to [commit it]. [Citations omitted.] In the absence of evidence of intoxication to a degree precluding the ability to form a specific intent to [commit the offense], the court is not required to charge the jury thereon.

*State v. Gerald*, 304 N.C. 511, 521, 284 S.E. 2d 312, 318-19 (1981).

Tracy Joyner testified that defendant smoked "a joint" while at Cherry Bland's trailer. In defendant's statement to police, defendant said he had smoked grass and mixed amphetamines with LSD Friday evening. There is evidence that defendant had been using drugs on 2 August 1985. However, sufficient evidence showing that he was intoxicated or unable to reason was not presented.

Cherry Bland testified that defendant was not drinking while he was at her trailer, nor did defendant appear drunk, high, or "messed up" to her. Defendant arrived at Bland's trailer between 10:00 p.m. and 11:00 p.m. and left around 12:30 a.m., giving Bland ample opportunity to observe his physical and mental state.

Bill Pruessing, the night auditor at the Happy Inn in Durham, checked defendant into the motel a short time after the crimes were committed. He testified that defendant was extremely courteous and patient when renting the room.

Defendant was seen shortly before and after he committed the crime, and he appeared rational and sober on both occasions. The evidence in this case does not support a finding by the trial court that defendant was intoxicated and the trial court did not err in failing to charge on the defense of voluntary intoxication. *See State v. Gerald*, 304 N.C. 511, 284 S.E. 2d 312. This assignment of error is without merit.

### III.

[3] Defendant finally contends that the trial court erred in finding as an aggravating factor at sentencing for assault with a deadly weapon inflicting serious injury that the victim was asleep at the time of the assault. We agree.

An aggravating factor is intended to aid the trial court in imposing a punishment commensurate with defendant's culpability. N.C.G.S. § 15A-1340.4(a) (1983). In *State v. Hines*, 314 N.C. 522, 335 S.E. 2d 6 (1985), while discussing the use of the victim's age as an aggravating factor, the Supreme Court stated a guideline for determining when a factor is properly used to aggravate a sentence. The Court said a factor should not be considered in aggravation of a sentence unless it makes defendant more blameworthy than he already is as a result of committing a violent crime against another person. "A victim's age does not make a defendant more blameworthy unless the victim's age causes the victim to be more vulnerable than he or she otherwise would be to the crime committed against him or her, as where age impedes a victim from fleeing, fending off attack, recovering from its effects, or otherwise avoiding being victimized. Unless [the victim's] age has such an effect, it is not an aggravating factor under the Fair Sentencing Act." *Id.* at 525, 335 S.E. 2d at 8.

The State argues that in this case the victim was rendered more vulnerable to defendant's assault because he was asleep when attacked and unable to defend himself; therefore, the trial court properly considered the victim's increased vulnerability, which was vulnerability beyond that ordinarily present in a felonious assault, when sentencing defendant. We reject the State's argument.

The State's claim of increased vulnerability is grounded solely on the fact that the victim was not warned of an impending assault before being assaulted by defendant. This alone, however, is insufficient to uphold the State's argument. "Inherent in most crimes is an unprovoked, uninvited and unwarranted attack on an unprepared, innocent victim. Such is the very essence of violent crime and it can be presumed that the Legislature was guided by this unfortunate fact when it established presumptive sentences for crimes which fall within the purview of the Fair Sentencing Act." *State v. Higson*, 310 N.C. 418, 424, 312 S.E. 2d 437, 441 (1984).

The victim in this case was sleeping and, therefore, unprepared for defendant's assault. Any unsuspecting victim, however, would be equally as vulnerable to this type of violent assault. *Id.; State v. Nelson*, 76 N.C. App. 371, 333 S.E. 2d 499

(1985). The State has failed to demonstrate how the victim's sleeping state rendered him any more vulnerable than victims similarly assaulted as required before this factor may be considered in aggravation of a sentence. *State v. Higson*, 310 N.C. 418, 312 S.E. 2d 437.

This case must be remanded for a new sentencing hearing because the trial court erred in its finding of a factor in aggravation. *State v. Ahearn*, 307 N.C. 584, 300 S.E. 2d 689 (1983).

## IV.

We have considered defendant's remaining assignments of error: that the trial court erred in refusing to submit to the jury the lesser included offense of voluntary manslaughter; that the trial court erred by submitting additional instructions to the jury on the charge of misdemeanor larceny; and that the trial court erred in failing to find as a mitigating factor in sentencing that defendant grew up in an environment lacking in the necessary guidance and structure. We hold that these assignments of error have no merit and do not warrant further consideration.

For the reasons set forth above, the second-degree murder conviction, No. 85CRS9542, and the misdemeanor larceny conviction, No. 85CRS11607, are upheld. However, the assault with a deadly weapon inflicting serious injury conviction, No. 85CRS 9543, is remanded for resentencing.

No. 85CRS9542 — Second degree murder — no error.

No. 85CRS9543 — Assault with a deadly weapon inflicting serious injury — remanded for resentencing.

No. 85CRS11607 — Misdemeanor larceny — no error.

Judges WELLS and BECTON concur.