STATE OF NORTH CAROLINA v. CHARLES JUNIOR DAVY

No. 894SC1349

(Filed 6 November 1990)

1. **Rape and Allied Offenses § 5 (NCI3d) — rape — identity of defendant as perpetrator — sufficient evidence**

The State's evidence of defendant's identity as the perpetrator of a rape was sufficient for the jury where it tended to show that the victim glimpsed her assailant as he pulled an afghan over her head and was able to tell that he was a large, dark-complexioned black man; within seconds after the incident, the victim observed a pickup truck back

out of her driveway, and defendant's pickup matched the description of this truck; tire impressions identical to the tread on defendant's truck were found on the ground outside the victim's home; defendant knew that the victim's husband was away on military duty; hairs found on defendant's pants were microscopically consistent with hairs taken from the victim; and fibers found on defendant's pants were consistent with fibers in a blanket on the victim's bed and in the victim's bedclothes.

Am Jur 2d, Rape § 88.

2. **Searches and Seizures § 14 (NCI3d)— request to speak to lawyer—subsequent consent to search—voluntariness**

Defendant's consent to a search of his pants for hair and fibers was not involuntary because he had previously requested to speak to a lawyer where defendant admitted that he had been told that he was free to leave the sheriff's office before detectives asked his permission to roll his pants with a lint brush.

Am Jur 2d, Searches and Seizures §§ 46, 48.

Validity of consent to search given by one in custody of officers. 9 ALR3d 858.

3. **Jury § 6.3 (NCI3d)— question to prospective jurors— disallowance not prejudicial**

No prejudice was shown by the trial court's disallowance of defense counsel's question to prospective jurors as to whether those who concluded that the prosecution had not proven defendant's guilt beyond a reasonable doubt would change their minds or verdicts if they found that a majority of the jurors believed defendant was guilty where the entire jury *voir dire* was not transcribed and made a part of the record. Furthermore, such matter was within the sound discretion of the trial court.

Am Jur 2d, Jury §§ 197, 200, 202.

4. **Criminal Law § 68 (NCI3d); Rape and Allied Offenses § 4 (NCI3d)— admissibility of hair and fiber evidence**

The trial court in a rape case did not err in admitting hair and fiber evidence removed from defendant's pants on the ground that defendant could have picked up the hair and

fibers by riding in the same police car in which the victim had ridden earlier in the day since this argument goes to the weight and not the admissibility of the evidence.

**Am Jur 2d, Rape § 88.**

**5. Criminal Law § 1127 (NCI4th) — rape — aggravating factor — victim asleep**

The trial court did not err in finding as an aggravating factor for rape that the victim was especially vulnerable because she was asleep and was therefore impeded from fleeing or fending off the attack.

**Am Jur 2d, Criminal Law §§ 598, 599; Rape § 115.**

**6. Criminal Law § 1127 (NCI4th) — rape — aggravating factor — young children present**

The trial court properly found as an aggravating factor for rape that the victim's two young children were present at the time of the attack since the victim was rendered more vulnerable to an attack because of her fear for the safety of her children.

**Am Jur 2d, Criminal Law §§ 598, 599; Rape § 115.**

**7. Criminal Law § 1127 (NCI4th) — rape — aggravating factor — victim on menstrual cycle**

The trial court erred in finding as an aggravating factor for rape that the victim was on her menstrual cycle at the time of the attack where there was no evidence that this fact rendered her physically infirm or more vulnerable and less able to protect herself from her assailant or that defendant targeted her or took advantage of her because of this fact.

**Am Jur 2d, Criminal Law §§ 598, 599; Rape § 115.**

**8. Criminal Law § 1127 (NCI4th) — rape — aggravating factor — knowledge that victim's husband was away**

The trial court properly found as an aggravating factor for rape that defendant knew that the victim's husband was away on military duty and targeted her because of this knowledge.

**Am Jur 2d, Criminal Law §§ 598, 599; Rape § 115.**

STATE v. DAVY

[100 N.C. App. 551 (1990)]

APPEAL by defendant from a judgment entered 4 August 1989 and an order entered 15 September 1989 by *Judge James R. Strickland* in Superior Court, ONSLOW County, denying the return of defendant's seized vehicle. Heard in the Court of Appeals 21 August 1990.

In January 1989, the victim, her husband and their two children were living in a mobile home in Jacksonville, North Carolina. On the evening of 28 January 1989, the victim's husband, who was serving in the Marine Corps, was deployed to California on military maneuvers and the victim and the two children were at home in Jacksonville. In the early morning hours on 29 January 1989, the victim was awakened by the sound of footsteps in the hall. She saw a tall black man standing over her; he threw a crocheted afghan over her head. Through the loosely knit fabric of the afghan, the victim was able to see that her attacker was a dark-complected black man. He smelled of alcohol. She touched his head and testified that he had a short, military style haircut. The victim was on her menstrual cycle and was wearing a tampon. She testified that he penetrated her. However, she also testified that his penis was not fully erect and that he did not ejaculate. When one of the victim's children began to cry, the assailant fled. The victim ran to the window and saw a "pukey" brown pickup truck with a red, black and gold license plate on the front back out of her driveway and drive down Maplehurst Road toward Highway 53. The victim immediately contacted the police.

Upon arrival, the police took the victim's statement. Deputy Allen Pate testified that the victim related to him essentially the same events described above. Deputy Pate and Sergeant Bryan's investigation revealed that a kitchen window had been forcibly entered. The officers also observed tire tracks near the window and noted two or three different types of treads.

Deputy Pate canvassed the area looking for the attacker's truck. At 10:24 a.m. he noticed a small pickup truck in the defendant's driveway that fit the description the victim gave to the officer. There was no dew on the vehicle and the hood was warm. Deputy Pate radioed for Deputy Dickerson and the two officers knocked on the front door. Defendant came to the door wearing a tee shirt and a robe. He smelled of alcohol and incense but did not appear intoxicated. The defendant agreed to go to the police station and he followed the two officers in the pickup truck. The officers con-

STATE v. DAVY

[100 N.C. App. 551 (1990)]

firmed that the tread on the truck was consistent with some of the tracks found at the victim's home.

At the station, the defendant volunteered that he had been at the victim's residence on two prior occasions; the first time he drove in and drove out of the victim's residence, on the second visit, he drove in and backed out. Defendant allowed Detective Brown to examine his underwear. There were neither menstrual nor seminal stains. Defendant stated that he had worn other underwear the night before and allowed his house to be searched for the underwear. Before leaving the station, the defendant allowed Detective Brown to roll his pants with a lint roller for evidence.

While the defendant was still at the sheriff's office, the victim arrived and became hysterical upon seeing the defendant's truck in the parking lot. The victim also spoke with Hattie Kent who told her that Kelly Wright, Hattie and the defendant had left a birthday party on Saturday night and driven to the victim's house. They knocked on the door and when no one answered, they went to a phone booth and tried calling. When there was no answer, they decided to go home. Hattie said that the defendant had asked if she had girlfriends she could introduce him to, and when she told him they were all married, the defendant replied, "Well, them's [sic] the best kind of women."

A SBI examination of the hairs on defendant's pants found them to be microscopically consistent with hairs known to have come from the victim. No pubic hair similar to the victim's was found in the defendant's underwear and there were no hairs of Negroid origin in the victim's pubic hair combings.

A forensic fiber examiner found two types of polyester in the sample from the defendant's pants which were consistent with two types of polyester from a brown blanket on the victim's bed. White fibers found on the defendant's pants were consistent with the white blanket from the victim's bed. Gold and blue fibers were recovered from the victim's bedclothes and identical fibers were found in the sample taken from the defendant's pants.

From his conviction of second degree rape and misdemeanor breaking and entering and from the denial of his motion for the return of the vehicle seized at the time of his arrest, defendant appeals.

STATE v. DAVY

[100 N.C. App. 551 (1990)]

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Marilyn R. Mudge, for the State.*

*Gaylor, Edwards, Vatcher & Bell, by Walter W. Vatcher, for the defendant-appellant.*

LEWIS, Judge.

Defendant argues that the trial court's refusal to grant his motion to dismiss at the end of the presentation of all the evidence constituted reversible error. In order to overcome a motion to dismiss, the State must introduce more than a scintilla of evidence of each essential element of the offense and that the defendant was the perpetrator of the offense. *State v. Powell*, 299 N.C. 95, 99, 261 S.E.2d 114, 117 (1980). The evidence must be considered in the light most favorable to the State in determining its sufficiency, and the State is entitled to each and every reasonable inference to be drawn therefrom. *Id. State v. Jackson*, 309 N.C. 26, 40, 305 S.E.2d 703, 714 (1983). The weight and credibility of the evidence presented are matters for the jury to determine and are not considered on a motion to dismiss or for nonsuit. *State v. McNeil*, 280 N.C. 159, 162, 185 S.E.2d 156, 157 (1971).

[1] Defendant argues that there is insufficient evidence of the defendant's identity as being the perpetrator of the crime to allow the jury to deliberate. We disagree. The victim testified that she glimpsed her attacker as he pulled the afghan over her head and she was able to tell that he was a large, strong, dark-complected black man. Within seconds after the incident, she observed a truck which she later positively identified as the vehicle that drove away from her home down Maplehurst Road. Tire impressions identical to the tread on defendant's truck were found on the ground outside the trailer window. The State also produced evidence that tended to show that the defendant knew that the victim was married and that her husband was away on military duty. Hairs and fibers consistent to those found on the victim were found on the defendant. These facts present sufficient evidence to go to the jury as to the defendant's identity as the perpetrator. The defendant has pointed out in his brief a number of inconsistencies in the State's evidence; however, these discrepancies were for the jury to weigh and consider. This assignment of error is overruled.

[2] Defendant next argues that the trial court committed reversible error when it denied his motion to suppress the hair and fiber

evidence recovered from his pants. Defendant argues that this evidence should have been suppressed because he did not voluntarily give his consent to the search and seizure of the hairs and fibers on his pants. The test for determining the validity of a consent search is whether, under the totality of the circumstances, the consent was induced by duress or coercion or was voluntary. *State v. Powell*, 297 N.C. 419, 426, 255 S.E.2d 154, 158 (1979); *Schneckloth v. Bustamonte*, 412 U.S. 218, 227, 93 S.Ct. 2041, 2047-48, 36 L.Ed. 2d 854, 862-63 (1973). When a defendant seeks to suppress evidence on grounds his consent to search was involuntary, the trial court must conduct a voir dire to determine whether consent was, in fact, given without compulsion. *State v. Washington*, 86 N.C. App. 235, 238-39, 357 S.E.2d 419, 422, *disc. rev. denied*, 322 N.C. 485, 370 S.E.2d 235 (1988). These findings are conclusive on appeal if supported by competent evidence. *Id.*

In the present case, defendant argues that because he previously had requested to speak to a lawyer, his consent to the rolling of his trousers with a lint brush was coerced and his consent was not freely and voluntarily given. We disagree. Defendant admits that he had been told that he was free to leave the sheriff's office before he was asked by the detectives about rolling his pants. He agreed to allow the detectives to roll his pants, stepping over to the detective's desk to allow the officer to perform the task. We find that the trial court's findings are supported by competent evidence and must be upheld. This assignment of error is overruled.

[3] Defendant next argues that the court erred in sustaining the State's objection to the following question asked by defense counsel during the voir dire:

> If you come to the conclusion that the prosecution had not proven that the accused was guilty beyond a reasonable doubt and you found a majority of the jurors believed the Defendant was guilty, would you change your mind or your verdict only because you were in the minority?

After the jury was impanelled, defense counsel asked that the above question and the court's ruling sustaining the State's objection to the ruling be noted on the record. However, the entire jury voir dire was not transcribed or made a part of the record. On this record it is impossible to tell whether the trial court erred in sustaining this objection. *See State v. Parks*, 324 N.C. 420, 423, 378 S.E.2d 785, 787 (1989). (When determining propriety of

jury voir dire questions, courts must review entire record of jury voir dire, rather than isolated questions.) Furthermore, such matters are within the sound discretion of the trial judge. *State v. Banks*, 295 N.C. 399, 245 S.E.2d 743 (1978). Based on the record before us, we find neither abuse nor prejudice in the court's ruling. This assignment is overruled.

**[4]** Defendant also argues that the trial court committed reversible error when it allowed the introduction of hair and fiber evidence removed from the defendant's pants with a lint brush. Specifically, he maintains that he could have picked up the incriminating hair and fibers by riding in the same police car in which the victim had ridden earlier in the day. Defendant argues, "although a break in the chain of custody does not exist after the fibers were taken from the Defendant's trousers, the break exists in that the trousers were contaminated *prior* to the taking of the fiber and hair specimens." We hold that the trial court did not commit reversible error in admitting this testimony. There was no break in the chain of custody after the sample was taken from the defendant's pants. The argument that he may have picked up the fibers somewhere else goes to the weight of such evidence, not to its admissibility. See *DeVooght v. State*, 722 P.2d 705 (Okla. 1986) (admitting fiber evidence while acknowledging the possibility that it could have been conveyed by a secondary source upheld).

Finally, defendant argues that the trial court erred in aggravating his sentence based upon a finding that "the victim was particularly and especially vulnerable in that she was asleep; that two small children were present; that she was having her period and that her husband was away on military duties and that the defendant was specifically aware of this vulnerability and made a calculative decision to proceed with the commission of this offense." These findings are analogous to Aggravating Factor 10(d), G.S. § 15A-1340.4(a)(1)(j), allowing a court to aggravate the defendant's sentence because "[t]he victim was very young, or very old, or mentally or physically infirm." G.S. § 15A-1340.4(a)(1)(j). Vulnerability is the concern addressed by this aggravating factor. *State v. Ahearn*, 307 N.C. 584, 603, 300 S.E.2d 689, 701 (1983). The State has the burden of showing (1) that the victim was in fact vulnerable because of conditions at the time of the offense and (2) that she was targeted because of these conditions or that the defendant took advantage of them while committing the offense. *State v.*

STATE v. DAVY

[100 N.C. App. 551 (1990)]

*Drayton*, 321 N.C. 512, 514, 364 S.E.2d 121, 122 (1988). We will address each of these factors in turn.

**[5]** 1. *"The victim was particularly and especially vulnerable in that she was asleep."*

In *State v. Drayton, supra,* our Supreme Court upheld a finding that the victim had a blood alcohol content of .29% at the time of his attack as a nonstatutory basis for aggravating the defendant's sentence. Holding that vulnerability was the gravamen of G.S. § 15A-1340.4(a)(1)(j), the court stated that the victim's high blood-alcohol level "supports a finding that a person's ability to flee, fend off an attack, or otherwise avoid being victimized is impaired." In *Drayton,* the victim was conscious and walking. *Id.* In the present case the victim was asleep. Reason and logic compel us to conclude that if being heavily intoxicated makes one vulnerable to physical attack, then being asleep would surely render a rape victim as vulnerable to attack as someone who was heavily intoxicated. We conclude that the trial court properly aggravated the defendant's sentence because the victim was asleep and was therefore "impeded from fleeing or fending off the attack." *Drayton, supra, but see State v. Underwood,* 84 N.C. App. 408, 352 S.E.2d 898 (1987).

**[6]** 2. *"Two small children were present."*

We find that the trial court properly found as an aggravating factor the fact that the victim's two young children were present in the house at the time of the attack. Particularly compelling is the fact that the victim's fifteen-month-old baby was in the room with the defendant and the victim during the attack. The baby awakened and started to cry as the defendant began to rape her mother. Because the victim feared for the safety of her baby, she clearly was inhibited in her ability to resist attack and protect herself. Under these circumstances, she was rendered more vulnerable to an attack and the court properly aggravated the defendant's sentence. *See State v. Eason,* 67 N.C. App. 460, 313 S.E.2d 221, *aff'd,* 312 N.C. 320, 321 S.E.2d 881 (1984).

**[7]** 3. *"That the victim was on her period."*

The State relies on *State v. Eason, supra,* where this Court upheld aggravation of the defendant's sentence because the defendant proceeded with a burglary despite the victim's pleas that she was pregnant. The court observed that the victim's pregnancy rendered her less able to resist and that her concern for her unborn

child enhanced the trauma she experienced because of the burglary. *Id.* at 464, 313 S.E.2d at 224. However, in *Eason* the prosecutrix was more than eight months pregnant at the time of the attack. Therefore, she clearly was more vulnerable because of her condition.

In the present case, the court aggravated the defendant's sentence because she was on her period. There is no evidence in the record that the fact that the victim was on her menstrual cycle at the time of her attack renders her "physically infirm" or more vulnerable and less able to protect herself from her attacker. Furthermore, there is no evidence that the defendant targeted her or took advantage of her because she was on her period. This finding was in error.

**[8]** 4. *"Her husband was away on military duties and that the defendant was specifically aware of this vulnerability and made a calculative decision to proceed with the commission of this offense."*

We find that the trial court properly aggravated the defendant's sentence based upon a finding that the defendant knew that the victim's husband was away on military duty and proceeded to target her because of this knowledge. *See State v. Drayton, supra.* Hattie Kent testified that she told the defendant that the victim's husband was away on military duty on the evening of the rape. The trial court properly concluded that the victim was more vulnerable because her husband was away on deployment and that the defendant targeted her because of his actual knowledge of this fact.

CONCLUSION

The trial court properly aggravated the defendant's sentence based upon his findings that the victim was asleep; that there were two young children present; and that she was specifically targeted because her husband was away at the time of the attack. The trial court erred in concluding that the victim was more vulnerable because she was on her menstrual cycle at the time of the attack and therefore more vulnerable to her attacker. "When an aggravating factor is incorrect, the trial judge cannot properly balance the aggravating and mitigating factors, and therefore the case must be remanded for resentencing." *State v. Taylor*, 74 N.C. App. 326, 328, 328 S.E.2d 27, 29, *disc. rev. denied*, 314 N.C. 547, 335 S.E.2d 319 (1985).

The defendant has also appealed the denial of his motion for the return of his truck, exclusive of any storage lien. At the time of his arrest, the defendant's 1977 Ford truck was seized and stored at a privately-owned local storage facility in Jacksonville, North Carolina. There is a local county storage facility, but the defendant's truck was not stored there. The storage fees now amount to more than the value of the truck. Defendant acknowledges that the truck was subject to impoundment as an item of evidence under G.S. § 15-11.1, and under the circumstances of this case, a lien for storage fees attached to the car by virtue of G.S. § 44A-2. However, defendant asks us

> to create a judicial exception to N.C.G.S. sec. 44A-1 *et seq.* and hold that when property is seized by a law enforcement agency who thereafter directs the local storage facility to store and retain said property at their direction . . . the lawful owner is entitled to immediate possession of said property and the law enforcement agency is thereafter held accountable for all storage liens.

We decline.

The judgment of conviction in the trial court is affirmed. We remand the cause for resentencing due to the fact that the trial judge erroneously found the aggravating factor that the victim was particularly and especially vulnerable because she was on her menstrual cycle.

No error in the trial.

Remanded for sentencing.

Judges WELLS and EAGLES concur.