STATE OF NORTH CAROLINA v. ROBERT L. DAVIS

No. COA96-12

(Filed 15 October 1996)

## 1. Evidence and Witnesses § 1252 (NCI4th)— confession— right to counsel

The trial court did not err in a prosecution for rape, burglary, and assault by denying defendant's motion to suppress his confession where, before being questioned, defendant was apprised of his *Miranda* rights, including his right to have counsel present during questioning; defendant clearly understood his rights and indicated that he did not wish to have counsel present; after making a telephone call, defendant asked if he needed a lawyer and was told that it was his decision to make; and defendant voluntarily continued answering questions, ultimately confessing to the crime. After defendant was advised that the decision to have an attorney present was his to make, nothing in his words or actions indicated his unwillingness to answer further questions in the absence of counsel, nor could be interpreted as a request for counsel.

**Am Jur 2d, Evidence §§ 633, 713.**

**Admissibility of pretrial confession in criminal case. 4 L. Ed. 2d 1833.**

**2. Criminal Law § 1291 (NCI4th Rev.)— sentencing—mitigating factor—acknowledgement of wrongdoing—motion to suppress confession—acknowledgement thereby repudiated**

The trial court did not err when sentencing defendant for rape, burglary, and assault by failing to find as a mitigating factor that defendant voluntarily acknowledged his wrongdoing where defendant moved to suppress his confession and thereby repudiated it.

**Am Jur 2d, Criminal Law § 527; Trial §§ 572, 841, 1760.**

**3. Criminal Law §§ 1158, 1159 (NCI4th Rev.)— sentencing—aggravating factors—victim sleeping—husband away**

The trial court did not err when sentencing defendant to a greater than presumptive term for second-degree rape and first-degree burglary by finding the nonstatutory aggravating factors that defendant knew that the victim's husband was away on military duty and that the victim was asleep in her bed just prior to the attack.

**Am Jur 2d, Trial §§ 841, 1760.**

Appeal by defendant from judgment entered 5 May 1995 by Judge Jay D. Hockenbury in Onslow County Superior Court. Heard in the Court of Appeals 9 September 1996.

*Michael F. Easley, Attorney General, by Jill Ledford Cheek, Assistant Attorney General, for the State.*

*Malcolm Ray Hunter Jr., Appellate Defender, by Mark D. Montgomery, Assistant Appellate Defender, for defendant-appellant.*

WYNN, Judge.

On the night of 16 April 1993, the prosecuting witness, hereinafter referred to as Ms. Doe because the identity of the victim is not an issue in this case, was attacked and raped in the bedroom of her home in Onslow County, North Carolina. The evidence in the record on appeal tends to show that the defendant, who was living next door, approached Ms. Doe at her home several days before the rape and introduced himself. During the course of their conversation defendant ascertained that Ms. Doe was at home alone and her husband,

who was deployed overseas with a branch of the military service, was due back the following Friday. While Ms. Doe was sleeping the night before her husband was due home, a man dressed in black, wearing a ski mask and gloves broke into the house and assaulted and raped her. The next day, defendant was taken to the police station for questioning. Detective Sergeant John Matthews of the Onslow County Sheriff's Department advised defendant of his *Miranda* rights, and defendant declined to have an attorney present. When Detective Joseph Graham arrived, he confirmed that defendant still understood his rights. Before questioning began, defendant requested and was allowed to make a phone call. Following the phone call, defendant told Detective Graham that "somebody at his office told him he needed a lawyer." Detective Graham responded, "Well, that's your decision." Defendant then asked, "Do I need a lawyer?" and Detective Graham replied: "That is your decision; I can't make that decision for you." Defendant did not respond, and followed Detective Graham into an office to be questioned.

The questioning was interrupted by the arrival of a friend and co-worker who was allowed to meet with defendant alone, after which the questioning resumed. Defendant initially denied any misconduct, stating that he only remembered certain portions of the night on which the rape occurred. After further questioning, defendant confessed to the rape and was placed under arrest.

At trial, the trial judge denied defendant's motion to suppress his confession. A jury found defendant guilty of second degree rape, first degree burglary, assault on a female, and assault inflicting serious bodily injury. After making findings of aggravating and mitigating circumstances, the trial judge sentenced defendant beyond the presumptive sentence to consecutive terms of imprisonment of 30 years for second degree rape and life for first degree burglary. Defendant appeals from the judgment and sentence entered against him.

The issues presented on appeal are whether the trial court erred in (I) denying the defendant's motion to suppress his pretrial confession, (II) failing to find as a mitigating circumstance that the defendant voluntarily acknowledged his wrongdoing, and (III) finding two non-statutory aggravating factors. We find no error.

I.

**[1]** Defendant first contends that his confession was taken in violation of both the state and federal constitutions, and therefore the trial

court erroneously denied his motion to suppress. More specifically, defendant alleges his question to Detective Graham, "Do I need a lawyer?" was an equivocal invocation of his right to have counsel present during interrogation. He argues that since police officers continued to question him after he had invoked his right to counsel, in violation of his constitutional rights under the Fifth and Fourteenth Amendments of the United States Constitution and Article I, Sections 19 and 23 of the North Carolina Constitution, his confession must be deemed involuntary and inadmissible. We disagree.

Prior to ruling on defendant's motion to suppress, the trial court held a *voir dire* hearing. "The trial court's findings of fact following a *voir dire* hearing on the voluntariness of a confession are conclusive on appeal if they are supported by competent evidence in the record." *State v. Massey*, 316 N.C. 558, 573, 342 S.E.2d 811, 820 (1986). In the case before us the trial court made the following relevant findings of fact:

> The defendant was orally advised of his constitutional rights otherwise known as Miranda Rights by Detective Matthews. . . . The defendant verbally answered that he understood his rights. Detective Matthews asked the defendant verbally "do you understand all these rights?" The defendant verbally answered "yes". And then the defendant wrote in the words "yes" on the form after that "yes" and put his initials above the word "yes" indicating that he understood all of his rights. Detective Matthews asked the defendant "do you want a lawyer now?" At first the defendant answered by shaking his head in a negative manner.
>
> Detective Matthews told the defendant the defendant would have to verbalize the answer at which time the defendant said "no" and then the defendant wrote "no" in the space provided in the form and put his initials "R.D." over the answer; otherwise he'd initially put his "R.D." over his answer "yes" indicating he understood all of his rights. The defendant then signed his name "Robert L. Davis" to the interview sheet.
>
> 6. After completing the interview sheet, the defendant remained in the Detective Division office in the presence of Detective Matthews waiting for the arrival of Detective Graham. Even though the defendant was free to walk around the room, he was always under surveillance by Detective Matthews. The defendant was "in custody" for Miranda purposes beginning from the time that he came in the presence of Detective Matthews.

7. Detective Graham arrived at the Sheriff's office Detective Division at approximately 9:45 a.m. and was told by Detective Matthews that the defendant had been advised of his Miranda warnings. Detective Graham asked the defendant if he still understood his rights, and the defendant stated that he did. Detective Graham and Lieutenant O'Malley took the defendant into Lieutenant O'Malley's office. The defendant request [sic] to make a phone call, which was allowed. The defendant called . . . a co-worker with the defendant at [his place of employment] and a person with whom he had been dating for nine months. The defendant told [his co-worker] that he did not need a lawyer. [The co-worker] advised him to get a lawyer.

After the phone conversation, the defendant asked Sergeant Graham if he, (Sergeant Graham), thought that the defendant needed a lawyer. Sergeant Graham told the defendant that that was a decision the defendant would have [sic] make on his own. The defendant never again mentioned anything about a lawyer. Sergeant Graham did not ask any additional questions to the defendant to clarify what the defendant meant by asking the question if Sergeant Graham thought whether the defendant needed a lawyer. The defendant was not again advised of his Miranda Rights. The statement of the defendant to Sergeant Graham was an ambiguous or equivocal reference to an attorney. It was not a clear assertion of the right to counsel. The defendant did not actually request an attorney.

8. Sergeant Graham and Lieutenant O'Malley questioned the defendant for approximately ten minutes in Lieutenant O'Malley's office. The defendant was not handcuffed or restrained in any way. The defendant denied having anything to do with the rape.

Sheriff Brown after this ten minute period came to the door of the office and was told that the defendant had been advised of his rights. The defendant was taken to the Sheriff's office where his employer . . . and his co-worker and friend . . . were waiting.

The defendant was allowed by the officers to talk alone with [his friend] for ten or fifteen minutes inside the Sheriff's office.

The defendant was then questioned by Sergeant Graham and Sheriff Brown with Sheriff Brown doing most of the interrogating. The defendant's friend and co-worker . . . was present. This

interrogation went on for approximately twenty to thirty minutes. The defendant made statements to the officers that he remembered right up to the point of breaking into the house and right after the incident. Sheriff Brown, among other comments that he made to the defendant, stated to the defendant that memory does not come and go. That if a person remembers some things they should remember them all. The defendant paused and then he gave his confession. The confession essentially was that he was jogging. That he stopped in front of the victim's house. That he went behind her house and raised her rear window. That he went into her house, kicked down the bedroom door. There was a struggle; that he may have hit the victim. That he raped her and then he went home and had trouble sleeping. That it was like a dream and that the defendant could not believe he did anything like that.

After the confession, the defendant placed his face in his hands and he and [his friend] were both crying, allowed by the officers to console one another. The defendant was then arrested, defendant was then placed under arrest and taken away.

9. At the time of the confession, the defendant was not handcuffed and was under no restraint. The defendant had been questioned a total of 30 to 40 minutes first by Sergeant Graham for approximately ten minutes and then by Sergeant Graham and Sheriff Brown. There were no promises, offers of reward or inducement by the law enforcement officers for the defendant to make a statement. There were no threats, suggestion of violence or show of violence by any law enforcement officer to persuade or induce the defendant to make a statement. There was no indication that the defendant had any desire to end the questioning. The defendant was in control of his mental faculties on April 16th, 1993. The defendant was 24 years old.

After examining the record, we find competent evidence to support the foregoing findings of fact.

Based on the findings of fact, the trial court concluded as a matter of law that "[t]he defendant was in full understanding of his constitutional right to remain silent and his right to counsel and all other rights and he freely, voluntarily, and intelligently and voluntarily waived each of these rights and thereupon made the statement." The trial court also concluded that:

The defendant's question to Sergeant Graham as to whether he (Sergeant Graham) thought the defendant needed a lawyer was not an actual or clear assertion of the right to counsel. It was not a request for counsel. It was an ambiguous or equivocal statement that did not preclude further questioning by the officers.

The trial court's conclusions of law are fully reviewable on appeal. *State v. Barber*, 335 N.C. 120, 129, 436 S.E.2d 106, 111 (1993), *cert. denied*, 129 L. Ed. 2d 865 (1994). In determining the appropriateness of the trial court's conclusion that the defendant's confession was voluntary and admissible, we note that "[t]here are no 'magic words' which must be uttered in order to invoke one's right to counsel. . . . In deciding whether a person has invoked her right to counsel, therefore, a court must look not only at the words spoken, but the context in which they are spoken as well." *State v. Torres*, 330 N.C. 517, 528, 412 S.E.2d 20, 26 (1992).

The record in the case before us indicates that before being questioned, the defendant was appraised of his *Miranda* rights, including his right to have counsel present during questioning; that he clearly understood his rights; and that he indicated he did not wish to have counsel present. This was evidenced by his responses, initials, and signature on the interview sheet. After making a phone call, the defendant asked if he needed a lawyer and was told that it was his decision to make. Thereafter, defendant voluntarily continued answering questions, ultimately confessing to the crime. After defendant was advised that the decision to have an attorney present was his to make, nothing in the defendant's words or actions indicated his unwillingness to answer further questions in the absence of counsel, nor could be interpreted as a request for counsel. Thus, under the facts of this case, and considering all the circumstances, we hold that the defendant did not invoke his right to counsel. *See Barber*, 335 N.C. 120, 436 S.E.2d 106. Accordingly, we affirm the trial court's denial of defendant's motion to suppress his statement.

II.

[2] Defendant next contends that the trial court erred by failing to find as a mitigating circumstance that the defendant voluntarily acknowledged his wrongdoing. We find this argument without merit.

The Supreme Court of North Carolina has clearly stated the rule as to whether a defendant may use evidence that he voluntarily

acknowledged wrongdoing as a mitigating circumstance after he moves to suppress the confession:

> In *State v. Hayes*, this Court held that a defendant could not use a confession to prove the mitigating circumstance after he had repudiated the confession. In *State v. Robbins*, we said, "[D]efendant made a motion to suppress these statements. This Court has held that if a defendant repudiates his incriminatory statement, he is not entitled to a finding of this mitigating circumstance." We hold that *when a defendant moves to suppress a confession, he repudiates it and is not entitled to use evidence of the confession to prove this mitigating circumstance.*

*State v. Smith*, 321 N.C. 290, 362 S.E.2d 159 (1987) (emphasis added) (citations omitted).

The defendant in this case moved to suppress his confession and has thereby repudiated it; accordingly, that repudiated confession cannot be used as the basis of a mitigating circumstance. Therefore, we uphold the trial court's refusal to find as a mitigating circumstance that defendant voluntarily acknowledged wrongdoing.

III.

**[3]** Defendant lastly contends that the trial court erred by finding two non-statutory aggravating factors. We disagree.

In addition to finding the statutory factor that defendant has applicable prior convictions, the trial judge sentenced the defendant to a term beyond the presumptive sentence for the charges of second degree rape and first degree burglary based on the following non-statutory aggravating factors:

> 1. The victim's husband was away on miltary [sic] duties and the defendant was specifically aware of this vulnerability and proceeded with the commission of this offense as a result of this knowledge.
>
> 2. The victim was especially vulnerable [in] that she was asleep in her bed just prior to the attack.

Defendant questions the propriety of these non-statutory factors as not authorized under N.C. Gen. Stat. § 15A-1340.4 (1988). The trial court is not limited to a consideration of statutory factors only. Non-statutory aggravating factors are permitted so long as they are "rea-

sonably related to the purposes of sentencing." N.C.G.S. § 15A-1340.4. Defendant alleges that the non-statutory factors found by the trial judge do not comport with the primary purposes of sentencing set out in N.C. Gen. Stat. § 15A-1340.3 (1988).

## A. Second Degree Rape

In the context of second degree rape, this Court addressed both of the non-statutory aggravating factors at issue in this case in *State v. Davy*, 100 N.C. App. 551, 397 S.E.2d 634, *disc. review denied and appeal dismissed*, 327 N.C. 638, 398 S.E.2d 871 (1990). In *Davy*, the defendant raped the victim after he broke into the victim's house while she was asleep, knowing that the victim's husband was away on military duty. *Id.* Among other aggravating factors, the trial court found that "[t]he victim was particularly and especially vulnerable in that she was asleep," and "[h]er husband was away on military duties and that the defendant was specifically aware of this vulnerability and made a calculative decision to proceed with the commission of this offense." *Id.* at 559-60, 397 S.E.2d at 638-39. This Court addressed the propriety of each factor in turn and upheld both aggravating factors. *Id.* In that case, we said: "[T]he trial court properly aggravated the defendant's sentence because the victim was asleep and was therefore 'impeded from fleeing or fending off the attack.' " *Id.* at 559, 397 S.E.2d at 638 (citation omitted). We also found that "the trial court properly aggravated the defendant's sentence based upon a finding that the defendant knew that the victim's husband was away on military duty and proceeded to target her because of this knowledge." *Id.* at 560, 397 S.E.2d at 639.

Similarly, in the present case, the defendant raped the victim after breaking into her house while she was sleeping and knowing that the victim was alone because her husband was away on military duty. As in *Davy*, we find that the trial court properly aggravated the defendant's sentence based upon both of the non-statutory aggravating factors at issue.

## B. First Degree Burglary

In the context of a first degree burglary charge, the Supreme Court of North Carolina has considered the non-statutory aggravating factors at issue.

In *State v. Thompson*, 328 N.C. 477, 402 S.E.2d 386 (1991), the trial court aggravated the defendant's sentence on the charges of first

**STATE v. DAVIS**

[124 N.C. App. 93 (1996)]

degree burglary and robbery by finding that "defendant took advantage of the victims being helpless and defenseless." *Id.* at 494, 402 S.E.2d at 395. The State contended and the Court agreed that "a person who is attacked while asleep is in a more vunerable [sic] position than one who is conscious of his surroundings." *Id.* at 495, 402 S.E.2d at 395. In upholding the use of this aggravating factor, the Court overruled *State v. Underwood*, 84 N.C. App. 408, 352 S.E.2d 898 (1987), which had held that "the fact that the victim was asleep when defendant committed an assault with a deadly weapon inflicting serious injury was not a proper aggravating factor because the victim was in no worse position than any other unsuspecting victim." *Thompson*, 328 N.C. at 494, 402 S.E.2d at 395.

Moreover, in *State v. Taylor*, 322 N.C. 280, 367 S.E.2d 664 (1988), our Supreme Court upheld the trial court's finding of the non-statutory aggravating factor for defendant's burglary conviction that defendant "had inside information, knowing when that lady was alone in a rural area and took advantage of it with the keys." *Id.* at 286, 367 S.E.2d at 668. In *Taylor*, the defendant had talked with the victim earlier in the day and ascertained that she would be alone because her daughter would not be at home that night. *Id.* at 282, 367 S.E.2d at 665. In upholding the use of this aggravating factor, the Court noted:

> Here, the trial court aggravated defendant's sentence on the basis of defendant's use of information gained as a result of his inquiry to determine whether the victim would be alone and defendant's use of keys surreptitiously copied while they were entrusted to his wife. It is certainly reasonable to conclude that this is the type of behavior from which the public should be protected and from which possible future offenders should be deterred. Thus, the trial court's finding of the nonstatutory aggravating factor in question was clearly related to the purposes of sentencing.

*Id.* at 287, 367 S.E.2d at 668.

In the case before us, the defendant committed the burglary by breaking into the victim's house while she was asleep and after having ascertained that she would be in the house alone that night. Following the reasoning of the Supreme Court in *Thompson* and *Taylor*, we find that the trial court properly aggravated the defendant's sentence on the burglary charge based on the non-statutory factors at issue here.

For the foregoing reasons, we conclude that the defendant had a fair trial, free of prejudicial error.

No error.

Judges JOHNSON and LEWIS concur.