IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-749

Filed 6 August 2025

Jackson County, Nos. 20CRS000224-490, 20CRS000225-490

STATE OF NORTH CAROLINA

v.

GENE ALLEN LEOPARD, Defendant.

Appeal by defendant from judgment entered 9 February 2024 by Judge Thomas H. Lock in Superior Court, Jackson County. Heard in the Court of Appeals 8 April 2025.

*Attorney General Jeff Jackson, by Assistant Attorney General Lisa B. Finkelstein, for the State.*

*Devereux & Banzhoff, PLLC, by Andrew B. Banzhoff, for defendant-appellant.*

STROUD, Judge.

Defendant Gene Allen Leopard appeals from a judgment entered upon a jury's verdict finding him guilty of four counts of discharging a weapon into an occupied property. On appeal, Defendant argues that the trial court erred in denying his motion to dismiss at the close of the State's evidence and in determining that multiple shots of a firearm constituted multiple offenses. After careful review, we conclude that Defendant received a fair trial, free from prejudicial error.

## I.    Factual Background and Procedural History

On 28 April 2018, Jeremiah Nicholson and a friend were shooting targets on Nicholson's property. Defendant was a neighbor of Nicholson and had been for about twelve years. That evening, Defendant called 911 to report gunshots; at about 7:48 p.m., a law enforcement officer responded to the call. The law enforcement officer spoke with Defendant and Nicholson, and Nicholson informed officers that he was "shooting in a safe manner[,]" and left the scene.

About one hour later, at 8:54 p.m., Nicholson called 911 and reported shots fired into his home. At trial, Nicholson testified that "[o]ne bullet came by the TV, through the window, right over the top of my head, and in the wall at the front door." When law enforcement returned to the scene, officers observed a broken window in Nicholson's home, a bullet, and bullet fragments in the living room. Law enforcement officers then obtained search and arrest warrants for Defendant, who ultimately gave himself up for arrest. After he was arrested, Defendant denied that he had fired into the house, claiming instead that he had fired into the air.

Law enforcement recovered a pistol and an AR-10 rifle in Defendant's home. One of the two magazines for the AR-10 was empty, and spent shell casings of the same caliber as Defendant's AR-10 were found on Defendant's porch. Moreover, law enforcement officers observed that light from Nicholson's kitchen was visible from Defendant's porch. A ballistics expert testified that although ballistics testing did not prove *conclusively* that the bullet and bullet fragments found in Nicholson's home had come from Defendant's AR-10, testing showed that they were consistent with

being shot from Defendant's AR-10 rifle.

A detective testified that a trajectory analysis determined that the shots had come from the direction of Defendant's home and that the muzzle velocity for an AR-10 exceeds 2000 feet per second. Shortly after the evening of the incident, another bullet was discovered in a tree between Defendant's home and Nicholson's home, consistent with rifle fire between the two properties.

On 18 June 2020, Defendant was indicted upon a true bill of indictment by a Jackson County Grand Jury on four separate counts of discharging a firearm into an occupied dwelling. The matter came on for trial 5 February 2024 in Superior Court, Jackson County. At the close of the State's evidence, Defendant moved to dismiss due to insufficiency of the evidence. The trial court denied Defendant's motion to dismiss and four days later, the jury found Defendant guilty of four counts of discharging a firearm into an occupied dwelling. Based on the jury's guilty verdicts, the trial court sentenced Defendant to, *inter alia*, consecutive terms of fifty-one to seventy-four months for Counts I and II; the trial court then consolidated Counts III and IV into a suspended term of fifty-one to seventy-four months served consecutively with the sentence in Counts I and II. From these judgments, Defendant entered timely written notice of appeal.

## II.    Discussion

On appeal, Defendant argues that the trial court erred by denying his motion to dismiss and further violated his "Fifth and Sixth Amendment rights by engaging

in judicial fact-finding in order to determine that the offenses were committed on separate occasions." We address each argument in turn.

## A. Standard of Review

A motion to dismiss due to insufficiency of the evidence "presents a question of law and is reviewed *de novo* on appeal." *State v. Norton*, 213 N.C. App. 75, 78, 712 S.E.2d 387, 390 (2011) (citation omitted).

## B. Motion to Dismiss

First, Defendant argues that the trial court erred in denying his motion to dismiss at the close of the State's evidence because "the statute requires the State to prove that [D]efendant had actual knowledge that the premises were [sic] occupied." We disagree.

"[T]o overcome a motion to dismiss, the State must introduce more than a scintilla of evidence of each essential element of the offense and that the defendant was the perpetrator of the offense." *State v. Davy*, 100 N.C. App. 551, 556, 397 S.E.2d 634, 636-37 (1990) (citation omitted). "In making its determination, the trial court must consider all evidence admitted, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." *State v. Rose*, 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994) (citation omitted).

North Carolina General Statute Section 14-34.1 defines the offense of discharging a firearm into occupied property:

> (a) Any person who willfully or wantonly discharges or attempts to discharge any firearm or barreled weapon capable of discharging shot, bullets, pellets, or other missiles at a muzzle velocity of at least 600 feet per second into any building, structure, vehicle, aircraft, watercraft, or other conveyance, device, equipment, erection, or enclosure while it is occupied is guilty of a Class E felony.
>
> (b) A person who willfully or wantonly discharges a weapon described in subsection (a) of this section into an occupied dwelling or into any occupied vehicle, aircraft, watercraft, or other conveyance that is in operation is guilty of a Class D felony.

N.C. Gen. Stat. § 14-34.1(a)-(b) (2023).

On appeal, Defendant seemingly contends that actual knowledge is required to be criminally culpable *for any criminal offense in the United States*, asserting that "the [United States] Supreme Court recognizes that a criminal defendant must 'know the facts that make his conduct fit the definition of the offense'" and that "[t]he [United States] Supreme Court has repeatedly affirmed the scienter requirement." Defendant further contends that a criminal statute, absent the "scienter" requirement, violates United States Supreme Court precedent, because "[i]n the intervening half of a century since the *Williams* case was decided, a number of United States Supreme Court decisions have made clear that actual knowledge is required." This argument seems to overlook the existence of statutes imposing tiers of criminal culpability based upon differing mental states.

In making this argument, Defendant cites a list of cases from the Supreme Court of the United States where actual knowledge *was* determined to be an element

of the criminal offenses at issue in those cases.[1]  As the State notes in its brief, however, "[t]he line of cases [cited] by Defendant involve federal specific intent crimes, not state law crimes as are involved in this case[.]"  None of those cases from the United States Supreme Court interpret North Carolina General Statute Section 14-34.1(b), the crime in this case.

In *State v. James*, our Supreme Court was tasked with interpreting North Carolina General Statute Section 14-34.1(b) and the defendant's argument that "there [wa]s no evidence [the defendant] shot into the automobiles *knowing* they were occupied."  342 N.C. 589, 597, 466 S.E.2d 710, 715 (1996) (emphasis added).  Our Supreme Court disagreed, reasoning that the defendant "clearly had reasonable grounds to believe that the automobiles might be occupied by one or more persons[, and t]hat is all the statute requires."  *Id.*  A violation of North Carolina General Statute Section 14-34.1(b) "does not require that the State prove any specific intent but only that the defendant perform the act which is forbidden by statute. It is a general intent crime."  *State v. Jones*, 339 N.C. 114, 148, 451 S.E.2d 826, 844 (1994) (citation omitted); *see also State v. Miller*, 267 N.C. App. 639, 643, 833 S.E.2d 644, 647 (2019) (observing that "[t]he protection of the occupant(s) of the building was the primary concern and objective of the General Assembly when it enacted [North Carolina General Statute Section] 14-34.1" (citation omitted)); *State v. Williams*, 284

---

[1] We observe that *none* of the cases cited by Defendant interpret North Carolina General Statute Section 14-34.1.

N.C. 67, 73, 199 S.E.2d 409, 412 (1973) (holding that "a person is guilty of the felony created by [North Carolina General Statute Section] 14-34.1 if he intentionally, without legal justification or excuse, discharges a firearm into an occupied building with knowledge that the building is then occupied by one or more persons or when he has reasonable grounds to believe that the building might be occupied by one or more persons").

After careful review, we observe that the State satisfied its burden to overcome Defendant's motion to dismiss by presenting evidence of each element of the offense of discharging a firearm into an occupied dwelling under Section 14-34.1(b). At trial, the State presented evidence that Nicholson was using the gun range on his property just under an hour before shots were fired into his home, and that Defendant had seen Nicholson using the shooting range and called the police to complain about Nicholson just under an hour before the shooting.

As the State notes, "[n]o reason was given why Defendant would not have noticed that his neighbor was no longer outside shooting his gun in his yard." Defendant had been a next-door neighbor of Nicholson for about twelve years before the incident. Testimony offered at trial showed that lights were on in the kitchen, and visible from Defendant's porch, at the time of the shooting. Finally, evidence was presented that the firearm allegedly used in the shooting, an AR-10, fires bullets at over 2000 feet per second, consistent with the definition of a firearm for purposes of North Carolina General Statute Section 14-34.1(b).

Based on this evidence, Defendant had reasonable grounds to believe that Nicholson's residence might be occupied by one or more persons. Viewing this evidence in the light most favorable to the State, we conclude that the trial court did not err in denying Defendant's motion to dismiss due to insufficiency of the evidence, as the State presented evidence of each element of the offense charged and that Defendant was the perpetrator of the offense.

## C. Jury Instructions

On appeal, Defendant makes an ancillary argument that "the jury instructions herein create the substantial possibility that [Defendant] was convicted without proof that he had actual knowledge that the dwelling was occupied" despite "acknowledg[ing] that the jury herein was instructed pursuant to the pattern instructions." However, Defendant did not object to the jury instructions at trial and did not request any additional instructions. Nor has Defendant argued the trial court committed plain error in the jury instructions.

"[T]o preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." N.C. R. App. P. 10(a)(1). Here, no such objection was made, nor did Defendant request a special jury instruction despite the trial court's explicit inquiry if there were "[a]ny requests for special instructions . . . [f]or [D]efendant?" Defense Counsel responded, "[n]o special instructions, Your Honor."

Shortly thereafter, the trial court observed that "[c]ounsel have had an opportunity to review the proposed instructions and the verdict sheets [setting out four separate instructions on Section 14-34.1(b)]. Are there any objections, corrections to the instructions or modifications of the instructions or anything either side believes necessary to deliver correct instruction to the jury?" Defense counsel replied, "[n]o, Your Honor."

In the absence of an objection at trial, jury instructions may be challenged on appeal only for plain error, and the defendant must "specifically and distinctly" argue plain error on appeal. *See State v. Lawrence*, 365 N.C. 506, 516, 723 S.E.2d 326, 333 (2012) ("Like federal plain error review, the North Carolina plain error standard of review applies only when the alleged error is unpreserved, and it requires the defendant to bear the heavier burden of showing that the error rises to the level of plain error." (citation omitted)). Again, to have an alleged error reviewed under the plain error standard, the defendant must "specifically and distinctly" contend that the alleged error constitutes plain error. N.C. R. App. P. 10(a)(4). Defendant's brief on appeal does not argue plain error. Consequently, we consider any argument regarding the jury instructions in this case abandoned.

**D. Multiple offenses**

Next, Defendant argues that "the trial court violated [Defendant]'s Fifth and Sixth Amendment rights by engaging in judicial fact finding to determine that multiple shots constituted multiple offenses."

Defendant first contends that the trial court's submission of four charges to the jury instead of one meant that the trial court erroneously engaged in "judicial fact finding" that four separate incidents occurred. Thus, he argues the trial court violated the constitutional principles of *Apprendi* and *Blakely*, as more recently addressed in *Erlinger*, that "[v]irtually 'any fact' that 'increases the prescribed range of penalties to which a criminal defendant is exposed' must be resolved by a unanimous jury beyond a reasonable doubt (or freely admitted in a guilty plea)." *Erlinger v. United States,* 602 U.S. 821, 834, 219 L. Ed. 2d 451, 464 (2024) (brackets omitted) (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 490, 147 L. Ed. 2d 435, 455 (2000)). Defendant notes that "[t]he operative constitutional issue is whether judicial fact-finding increased the possible sentence, regardless of the actual sentence imposed."[2]

Defendant's argument is a creative but misguided challenge to the trial court's denial of his motion to dismiss. If there was sufficient evidence, viewed in the light most favorable to the State, to support submitting each of the four charges to the jury, then the trial court did not err by submitted all four charges to the jury. The trial court did not engage in "judicial fact-finding" by determining which charges are

---

[2] Defendant also argues briefly that the submission of four charges to the jury and the jury instructions were in violation of his constitutional rights under the Fifth and Sixth Amendments. As noted above, at trial Defendant did not raise any constitutional objection to the issues submitted to the jury. "[T]he existence of a constitutional protection does not obviate the requirement that arguments rooted in the Constitution be preserved for appellate review. Our appellate courts have consistently found that unpreserved constitutional arguments are waived on appeal." *In re J.N.*, 381 N.C. 131, 133, 871 S.E.2d 495, 497 (2022) (citations omitted).

supported by sufficient evidence to submit to the jury. Ultimately, the jury, as the finder of fact, determined whether the State proved beyond a reasonable doubt that Defendant committed each of the four offenses.

Defendant's primary argument is that the evidence shows that the gunshots were in quick succession and should be treated as just one shot and one crime, not four. In *State v. Morrison*, it was contested whether the defendant had used an automatic or semi-automatic weapon when he fired into an occupied vehicle. *See* 272 N.C. App. 656, 666-67, 847 S.E.2d 238, 245-46 (2020). There, the defendant argued that "if he did use an automatic weapon, then all seven projectiles that hit the truck were likely the result of a single pull of the rifle's trigger, and therefore constituted a single act, not seven distinct acts." *Id.* at 666, 847 S.E.2d at 246 (citations omitted).

This Court disagreed, noting that under the caselaw, "because the weapon [the d]efendant used was not 'a machine gun or other automatic weapon,' . . . it was a weapon that required [the d]efendant to pull and release the trigger each time he decided to shoot" and the "[d]efendant's use of the semi-automatic rifle 'required that defendant employ his thought processes each time he fired the weapon.'" *Id.* at 669, 847 S.E.2d at 247 (citations omitted). Critically, "[a] semi-automatic rifle requires the person using it to pull the trigger each and every time that person wants to shoot the rifle at a target." *Id.* at 667, 847 S.E.2d at 246. This Court ultimately concluded that "the trial court did not err in denying [the d]efendant's motion to dismiss and correctly left it to the jury to determine whether the evidence proved beyond a

reasonable doubt [whether the d]efendant committed seven 'separate acts' supporting convictions for" violating Section 14-34.1. *Id.* at 670-71, 847 S.E.2d at 248.

Here, at trial, defense counsel argued that "as to each and every charge for each incident in connection with this occurrence, it should be one occurrence for this operation, not four different occurrences, as far as the charge for each bullet." However, it is undisputed that the weapon at issue is a *semi-automatic weapon*, meaning it requires one trigger pull per shot, in other words, "distinct and separate acts." *Id.* at 667, 847 S.E.2d at 246.

Upon our careful review of the evidence regarding bullet holes in the home, shell casings recovered at the scene, as well as testimony from eyewitnesses and experts, we conclude the evidence was sufficient to instruct the jury on four separate counts of violating North Carolina General Statutes Section 14-34.1(b). The trial court did not engage in "judicial fact-finding" by submitting all four charges to the jury since the evidence supported all four charges and did not err by denying Defendant's motion to dismiss.

### III. Conclusion

We conclude that the trial court did not err in denying Defendant's motion to dismiss at the close of the State's evidence because the State satisfied its burden of presenting evidence of each element of each charged offense and that Defendant was the perpetrator of the offenses.

NO ERROR.

Judges STADING and MURRY concur.